335 A.2d 917.

STATE *vs.* KEVIN C. LANIGAN.

APRIL 23, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is an appeal from a judgment entered in the Superior Court finding that the defendant had violated the terms of his probation and ordering the execution of a previously suspended sentence.

It appears that on January 31, 1973, defendant pleaded guilty to an indictment charging him with committing an assault with a dangerous weapon and was given a prison sentence of 5 years and 6 months. Execution of the sentence was suspended and defendant was placed on probation for 5 years. Some 6 months later, on June 14, 1973, he was apprehended on a capias issued at the request of the Attorney General's department and taken

before a justice of the Superior Court. At that time, defendant, who was not represented by counsel, told the justice that he "did not know whether he was coming or going." A representative of the Attorney General's department informed the court that defendant's present difficulties concerned an assault and an incident involving his driving an automobile after his license had expired. At this point defendant reported that the charge involving the expired license had been discontinued that very morning in the District Court. The trial justice, after making some effort to find out what had happened in the District Court, scheduled the violation hearing for the following week and advised defendant to contact the Public Defender's office. The defendant was held without bail and taken to the Adult Correctional Institutions.

The defendant returned to court on June 21 at which time he was represented by a member of the Public Defender's staff. As the hearing began, an assistant attorney general informed the trial justice that the state was moving for execution of the suspended sentence because of defendant's "anti-social behavior." The first witness was a Providence police officer. He described a motor vehicle collision that occurred on June 10 in which a vehicle operated by defendant struck an unattended parked automobile in the rear, forcing the second vehicle to collide with another unattended parked vehicle, and thereby propelling the third automobile 100 feet. Investigation disclosed that defendant's driver's license had expired 3 months earlier in March. The defendant was charged. Driving after one's license has expired is a misdemeanor. The officer conceded that the charge had been discontinued in the District Court. The defendant was given a breathalyzer test. It gave a zero reading. The test was ordered because defendant at the time of the collision was in a dazed condition.

The second witness was a fellow participant with defendant in a methadone maintenance program being conducted by a drug abuse unit of the Department of Mental Health, Retardation and Hospitals. He described an incident in which he and defendant were seated on a playground bench surrounded by a group of "kids." He was struck in the back a number of times. The witness discovered that whoever hit his back was carrying a knife in his hand because he had in fact been stabbed a number of times. The witness "guessed" that defendant wielded the knife. At this point, the trial justice took note of the witness' drowsiness, his hesitancy and slurred speech, and excused him from testifying any further. The trial justice stated that since the witness was under the influence of some drug he would disregard this testimony.

The third and last witness for the state was the physician who supervised the methadone program. He detailed some of defendant's past involvements with drugs and his efforts to rehabilitate himself. The doctor indicated that some of the tests of defendant's urine taken while he was in the program indicated that defendant had used some drugs other than methadone. One was an antihistamine and the other was a sleeping pill.

In his testimony, defendant told of his attempts after voluntarily joining the methadone program to rehabilitate himself and return to the community. He insisted that the sleeping pill he had taken had been obtained by way of a prescription given him by a physician whose office was in Cranston. He denied taking the antihistamines. He attributed his somewhat stuporous condition at the scene of the collision to the crash impact which caused his head to strike the steering wheel.

In ruling that defendant had violated the terms of his probation agreement the trial justice remarked that the evidence indicated that at the time of the expired license

episode defendant had been driving at a substantial rate of speed. He based this conclusion in part on the officer's failure to make any reference to skid marks at the collision scene. The trial justice found that defendant's antisocial conduct consisted of driving after his license had expired, driving a motor vehicle while under the influence of drugs, and possession and use of drugs.

Super. R. Crim. P. 32(f) specifically requires that, prior to any hearing on whether the court shall revoke probation or revoke a suspension of sentence or impose a sentence previously deferred, the prosecution "shall furnish the defendant and the court with a written statement specifying the grounds" on which it bases the revocation. The state concedes that it has not complied with the notice requirements specified in the rule. The only notice given defendant was the information supplied by the trial justice before whom defendant appeared on June 14. The court's rule as to notice is an embodiment of one of the minimum due process requirements which have been promulgated by the United States Supreme Court as governing any hearing relating to a revocation of a probation or parole. *Gagnon* v. *Scarpelli*, 411 U. S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey* v. *Brewer*, 408 U. S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *State* v. *Bettencourt*, 112 R. I. 706, 315 A.2d 53 (1974).

The risk that can arise by nonadherence to the notice requirements of Rule 32(f) can be seen in the present appeal. The defendant was informed by the June 14 trial justice that his revocation hearing would revolve around the status of his driver's license and the assault incident. He was not told that his "anti-social" conduct would be measured by the distance traveled by the third car, the speed at which he was proceeding, or his consumption of drugs. If the notice requirement had been satisfied, defendant might have had the opportunity to show that the

operator of the third vehicle had neglected to set his brake once he parked his car. His counsel might have been alerted to ask the police officer if he had noticed any skid marks in the area. The physician who allegedly wrote the sleeping pill prescription could have been subpoenaed as a witness.

■ While defendant's driving after his license expired is unchallenged, it appears to us that in the light of the circumstances of this case this act, standing by itself, was not the type of antisocial behavior that would warrant the implementation of the prison sentence previously imposed. At the time the license expired, defendant was institutionalized as a participant in the state's methadone program.

Rule 32(f) means what it says. It should be obeyed. Adherence to its provisions will facilitate the due process requirements of proper notice.

The defendant's appeal is sustained; the order directing execution of the sentence previously imposed is vacated; and the case is remanded to the Superior Court where the state, if it so wishes, after furnishing the proper notice can take the proper steps so that a full and proper examination can be made as to whether the defendant abided by the terms of his probation agreement.

*Julius C. Michaelson*, Attorney General, *William G. Brody*, Special Asst. Attorney General, for plaintiff.

*William F. Reilly*, Public Defender, *Allegra E. Munson*, Asst. Public Defender, for defendant.