**STATE**

v.

**Steven M. DESROSIERS.**

**No. 88–111–C.A.**

Supreme Court of Rhode Island.

June 5, 1989.

James E. O'Neil, Atty. Gen., Annie Goldberg, Jeffrey J. Greer, Asst. Attys. Gen., for plaintiff.

James P. Renaldo, Hutton & Hickey Law Offices, Ltd., Providence, for defendant.

## OPINION

MURRAY, Justice.

A Superior Court jury found Steven Desrosiers guilty of one count of breaking and entering and one count of larceny. The defendant now appeals his conviction and the reimposition of three years of a previously suspended sentence. We affirm.

In November of 1986 Steven Desrosiers was on probation with a suspended sentence. A criminal information charged that on November 18, 1986, Steven Desrosiers, Nicholas Ventre, and Raymond Bennett entered a dwelling with intent to commit larceny in violation of G.L.1956 (1981 Reenactment) § 11-8-3 and stole electronic equipment, a camera, and jewelry worth over $500 in violation of G.L.1956 (1981 Reenactment) § 11-41-1 and § 11-41-5, as amended by P.L.1985, ch. 287, § 1. Steven Desrosiers was tried separately. At Desrosiers' trial, Nicholas Ventre testified that he, Desrosiers, and Raymond Bennett drove to Foster, Rhode Island. There Desrosiers broke down the door of a house, he and Bennett entered, and then left the house taking a number of items with them. Among the items were a television set, a videocassette recorder, and jewelry. Ventre also testified that in return for agreeing to testify against Desrosiers, Ventre pleaded guilty to identical charges against him, and received a five-year suspended sentence with five years of probation and a $500 fine. Other witnesses testified at the trial, including the victim whose home was broken into, police officers, and defendant's sister-in-law. The jury returned a verdict of guilty against defendant on both counts. A sentencing hearing was scheduled, and on the day of the hearing Desrosiers was notified that in addition to his sentence for the new convictions, the violation of his probation would also be considered. At the hearing, Desrosiers was sentenced to ten years for breaking and entering and one year for larceny. The sentences were consecutive. In addition, the trial justice reinstated three years of a previously suspended sentence, also to be served consecutively.

The defendant bases his appeal on three theories. The first theory is defendant's claim that his due-process rights were violated by the revocation of probation and the reinstatement of the previously suspended sentence despite the state's failure to provide notice under Rule 32(f) of the Superior Court Rules of Criminal Procedure. The second is that the trial justice

erred in refusing to charge the jury that close questions must be resolved in favor of the defendant. The third is that it was error for the trial justice to refuse to give a specific instruction that the prosecution must prove the defendant's identity as the perpetrator beyond a reasonable doubt. These issues will be addressed in order. We begin with the first.

## I

The first issue is whether a defendant's due-process rights are violated by the revocation of probation and the reinstatement of a previously suspended sentence despite the prosecution's failure to give notice in strict compliance with Rule 32(f) of the Superior Court Rules of Criminal Procedure. Under the United States Constitution, the revocation of parole or probation impinges upon a liberty interest and an individual is afforded due-process protection under the Fourteenth Amendment in regard to such revocation. *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656, 661 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484, 495 (1972); *State v. Bettencourt,* 112 R.I. 706, 708–09, 315 A.2d 53, 54–55 (1974). Procedural due-process protection for criminal defendants is also found in the Rhode Island Constitution. *State v. Berker,* 114 R.I. 72, 73–74, 328 A.2d 729, 730–31 (1974); *State v. Conragan,* 58 R.I. 313, 317, 192 A. 752, 754 (1937); R.I. Const., art. I, § 10.

The process due for probation-revocation hearings is less formal than the full panoply of rights afforded at a criminal trial. *Gagnon v. Scarpelli,* 411 U.S. at 782, 93 S.Ct. at 1759–60, 36 L.Ed.2d at 661–62; *Morrissey v. Brewer,* 408 U.S. at 480, 92 S.Ct. at 2600, 33 L.Ed.2d at 494. Under Rhode Island law, Rule 32(f) of the Superior Court Rules of Criminal Procedure sets out what is minimum due process in probation-revocation hearings consistent with the directives of the United States Supreme Court. *State v. Franco,* 437 A.2d 1362, 1364 (R.I.1981). Rule 32(f) provides:

"The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such action is proposed. * * * *Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision.*" (Emphasis added.)

It is true that failure to comply with the rule's notice requirement may be grounds for reversal of a finding of a violation. *State v. Lanigan,* 114 R.I. 514, 517, 335 A.2d 917, 920 (1975). However, if actual notice sufficient to satisfy due-process rights has been given, this court has refused to overturn a finding of violation for technical noncompliance with Rule 32(f). *State v. Franco,* 437 A.2d at 1364–65; *State v. Martin,* 116 R.I. 501, 505, 358 A.2d 679, 681 (1976).

A case in which the lack of notice of the alleged grounds of a violation required reversal is *State v. Lanigan,* 114 R.I. 514, 335 A.2d 917 (1975). In *Lanigan,* the defendant was on probation with a suspended sentence when he was arrested on the new charges of assault and driving while his license was expired. *Id.* at 515, 335 A.2d at 918. A court hearing was scheduled on the issue of whether the defendant had violated his probation because of his actions as alleged in the new charges. *Id.* However, at the violation hearing, instead of basing revocation on the new charges, the state moved to revoke probation on the basis of anti-social behavior. *Id.* This alleged anti-social behavior included attacking a fellow enrollee in a methadone program and taking drugs other than methadone. *Id.* at 515–16, 335 A.2d at 918–19. Although the defendant had received notice of the assault and license-expiration charge, he had not received any notice that revocation would be sought on the basis of anti-social behavior. *Id.* at 517, 335 A.2d at 919. This court held that the lack of notice of the grounds for the alleged violation unfairly prejudiced the defendant as he was not prepared to defend against charges of anti-social behavior. Accordingly the finding of

a violation was vacated. *Id.* at 517–18, 335 A.2d at 919–20.

An example of actual notice of the grounds of a violation sufficient to comply with Rule 32(f) is found in *State v. Martin*, 116 R.I. 501, 358 A.2d 679 (1976). In *Martin*, the defendant was on probation with a previously suspended sentence when he was charged with murder, assault, and larceny. *Id.* at 502–03, 358 A.2d at 680. The bail hearing in regard to the new charges and the violation-of-probation hearing were consolidated. *Id.* Although a separate Rule 32(f) notice was not provided, the defendant had received a copy of the criminal complaint listing the new charges against him. This court held that because the defendant was "alleged to have violated his deferred sentence agreement on the identical grounds on which he was charged and on which he was petitioning for bail," there was no prejudice to the defendant due to lack of a Rule 32(f) notice. *Id.* at 505, 358 A.2d at 681. Under *Martin*, a finding of violation will not be vacated because of technical noncompliance with Rule 32(f) when the defendant was in fact aware of the exact grounds for the alleged violation.

In regard to probation-revocation hearings, two rationales underlying procedural due-process requirements include that first, the alleged violator must be allowed to dispute the facts that are offered as proof of violation. Second, the purported violator may wish to present evidence of factors mitigating against reimposition of the suspended sentence. In the *Martin* case, notice sufficient to satisfy these two rationales was met. We note that the first rationale was met in *Martin* as the evidence that the defendant would present as favorable to him on the violation issue would be virtually identical to the evidence that would be favorable to him on the bail issue. Similarly, evidence that would be presented to mitigate against the reimposition of a suspended sentence would be virtually identical to that which would be presented to obtain a low bail. In cases in which the defendant's evidence pertinent to a *violation* hearing is virtually identical to defendant's evidence pertinent to some other type of hearing, there is no prejudice to

a defendant due to the state's failure to notify him or her separately that a violation hearing will be held.

It is our belief, however, that the best practice for prosecutors is to give a defendant separate notice that a violation of probation will be sought. In *Martin*, evidence relevant to other issues and evidence relevant to the issue of a violation were virtually identical. However, such identity of evidence may not exist in every case. We strongly urge prosecutors under Rhode Island law to give defendants timely written notice of probation-revocation hearings and the grounds for such hearings.

■ The *Martin* case is controlling in the case at bar. While Desrosiers was on probation with a suspended sentence, he was charged with larceny and breaking and entering. Desrosiers was found guilty, and his sentencing hearing and his violation hearing were consolidated. When Desrosiers was tried for the charges for which he violated his probation, he was afforded more procedural due-process rights than would be necessary at a violation hearing. The evidence presented by defendant to dispute the new charges at trial would be the very same evidence defendant would present to dispute the charges at a violation hearing. The defendant had the opportunity to present such evidence at his trial on the new charges. Similarly, any evidence Desrosiers would present to mitigate the length of his sentence on the new charges would be virtually identical to evidence he would present in regard to why he did not deserve to have his suspended sentence reimposed. Thus two of the rationales underlying procedural due process protection were met. Although it is true that defendant did not receive a written document informing him that the state was going to request reimposition of his suspended sentence until the morning of the sentencing hearing, there was no prejudice to Desrosiers because of this technical lack of notice. Desrosiers was afforded ample procedural due-process protection.

## II

■ The second inquiry is whether the trial justice erred in refusing to charge the

jury that close questions must be resolved in favor of the defendant. Under Rhode Island law, it is well established that a trial justice is not required to give instructions requested by a defendant as long as the charge given adequately covers the law relating to the request. *State v. Andrade,* 544 A.2d 1140, 1143 (R.I.1988). A trial justice may instruct the jury in his or her own words as long as the applicable law is stated. *Id.* We now turn to the topic of what type of jury instructions are necessary in regard to deciding close questions in favor of the defendant.

■ The Federal Constitution has long been interpreted to require proof of guilt beyond a reasonable doubt as the standard necessary for a criminal conviction. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). This standard is also employed under Rhode Island law. *State v. Bowden,* 473 A.2d 275, 278 (R.I.1984); *State v. Alexander,* 471 A.2d 216, 218 (R.I.1984). Accordingly a trial justice must instruct a jury that the prosecution is required to prove a defendant's guilt beyond a reasonable doubt. Proof beyond a reasonable doubt may be properly equated to proof of guilt to a moral certainty. *Commonwealth v. Wood,* 380 Mass. 545, 547, 404 N.E.2d 1223, 1225–26 (1980); *see also State v. Mantia,* 101 R.I. 367, 223 A.2d 843 (1966). In charging the jury, a trial justice must explain the definition of proof beyond a reasonable doubt.

■ In the instant case, defendant submitted requested jury instructions, including his request No. 10 which stated:

"[c]lose questions in criminal cases must ordinarily be resolved in favor of the accused in light of the defendant being entitled to the benefit of a reasonable doubt."

The trial justice declined to include request No. 10 in his charge. He was not required to give this instruction as long as the charge that was given adequately covered the proof-beyond-a-reasonable-doubt standard. As examined below, the jury instructions did adequately address that standard.

In his charge to the jury, the trial justice carefully explained that the charges against Desrosiers had to be proven beyond a reasonable doubt. In regard to the first count against Desrosiers, the trial justice stated the essential elements of breaking and entering. He then stated:

"If both those elements are proved beyond a reasonable doubt, you may return a verdict of guilty on Count 1."

In regard to the charge of larceny, the trial justice listed the essential elements of larceny, and then stated that these elements also must be proven beyond a reasonable doubt. He also explained the concept of proof beyond a reasonable doubt. He stated:

"[T]he State will have sustained its burden of proof beyond a reasonable doubt if, after you have compared all of the evidence, after you have considered all of the evidence among yourselves * * * you as an individual juror can say that your mind is in * * * that state where you have an abiding conviction to a moral certainty that the accusation laid against Mr. Desrosiers is true."

Later in his instructions, the trial justice expanded upon the definition of beyond a reasonable doubt. He stated:

"[W]hen I talk about moral certainty, I mean a virtual certainty, rather than an actual, immediate, or completely demonstrable certainty. The obligation on the State * * * is to prove guilt beyond a reasonable doubt. The obligation is not on the State to prove guilt beyond all possible doubt * * *."

We believe that the jury was properly apprised of the applicability and the definition of the proof-beyond-a-reasonable-doubt standard. This standard itself tells the jury that if a dubious case is presented against a defendant, their verdict must be not guilty. There is no other standard that is required in a criminal case. The trial justice did not err by declining to give the requested instruction.

### III

■ The last ground for appeal is that the trial justice erred when he refused to

give a specific instruction that the identity of the defendant as the perpetrator of the crime must be proven beyond a reasonable doubt. We addressed this issue in two recent opinions, *State v. Payette*, 557 A.2d 72 (R.I.1989) and *State v. Maxie*, 554 A.2d 1028 (R.I.1989). While it is true that the state must prove a defendant's identity beyond a reasonable doubt and that the jury must be instructed upon this point, a trial justice is not required to give a specific instruction on identity. This topic was the sole basis for appeal in *Payette*, and that recent opinion contains our decision and reasoning upon this subject.

In the instant case, the trial justice did not err by declining to give a specific instruction that the identity of the defendant as the perpetrator of the crime must be proven beyond a reasonable doubt.

The defendant's appeal is denied and dismissed. The judgment appealed from is affirmed. The papers of this case are remanded to the Superior Court.