DECISION
This case is before the Court on appeal from a decision of the Smithfield Town Council (the "Council"). The plaintiff, Smithfield Voters for Responsible Development, Inc. ("SVRD"), a non-profit corporation comprised of residents and landowners of Smithfield, is seeking reversal of a decision of the Council, dated July 14, 1998, which granted a request by W/S Smithfield Associates, LLC and certain property owners to amend the zoning ordinance to allow for construction of a large-scale commercial shopping center on land that was previously zoned for mixed residential use and planned development. In its July 14, 1998 decision, the Council reconsidered and reversed its earlier decision, dated June 16, 1998, to deny that same zone change request. This Court has jurisdiction of this appeal pursuant to R.I. Gen. Laws § 45-24-71.
 Facts/Travel
On April 23, 1998, W/S Smithfield and eight property owners (the "applicants") submitted a proposal for an amendment to the Smithfield zoning ordinance which would change the classification of certain property from mixed Residential (R-80) and Planned Development (PD) to Commercial (C). The subject property is known as Assessor's Plat 36, Lots 10, 11, 12, and 15, and Assessor's Plat 43, Lots 21D, 132 and a portion of 24 (the "Property"). The Property is located on Putnam Pike, Levi Lane, and Mountaindale Road in Smithfield, Rhode Island. W/S Smithfield sought the zone change in order to build The Crossing at Smithfield, a shopping center which would contain about 600,000 square feet of retail space on approximately 75 acres of land. To build the shopping center, two older strip commercial buildings and a trucking terminal, both currently on the Property, would be torn down. The area surrounding the Property encompasses The Apple Valley Mall, several strip malls, fast-food restaurants and a Super Stop 
Shop.
On review of the zone change proposal, the Town of Smithfield Planning Board (the "Planning Board") voted to recommend to the Council to deny the requested amendment. The Planning Board found that the proposed amendment would not be consistent with the goals of the Smithfield Comprehensive Plan (the "Comprehensive Plan") or with § 1.1 of the Smithfield Zoning Ordinance.
On June 16, 1998, the Council held a duly noticed public hearing on the merits of the zone change request.[1] After hearing evidence from a traffic engineer, a community planner, town residents and representatives of W/S Smithfield, the Council closed the public hearing. Councilwoman Lauraine Bouchard ("Bouchard") then made a motion, seconded by Councilman David Coia ("Coia"), to grant W/S Smithfield's petition for a zone change on the Property. That motion failed on a 2-to-3 vote. Voting in the majority, against the zone change, were Councilwoman Williams, Councilman Richard Poirier ("Poirier"), and Council President Alberto LaGreca ("LaGreca"). Voting in the minority, in favor of the zone change, were Bouchard and Coia. Pokier thereafter moved to deny the zone change request, and the Council voted 3-to-2 to do so. The decision of the Town Council was properly noted by the Town Clerk on June 17, 1998, publicly posted, and copied to all town departments.
No further official Council action was taken on the zone change application until the next regularly scheduled Council meeting on July 14, 1998. Councilwoman Williams, who voted with the majority at the June 16, 1998 hearing, moved to have the Council reconsider, under the category of "old business" on the Council's published agenda for the meeting, its earlier decision to deny the zone change request. The Town Council voted unanimously to reconsider the decision without any debate. Unlike as at the previous meeting, the public was never notified, in advance of the meeting, that the motion to reconsider or the zone change request would be on the agenda at the Council meeting of July 14, 1998. Neither the motion for reconsideration nor the zone change request appeared on the printed agenda for the meeting. Moreover, there is no evidence in the record that individual members of SVRD had actual notice that night of the Council's agenda, the motion to reconsider, or the vote on that motion. There is no record evidence that any individual members of SVRD were present at the July 14, 1998 Council meeting.
During the relevant portions of the Council meeting of July 14, 1998, the Council members engaged in little discussion of the merits of the applicants' proposed project; rather, in reconsidering the wisdom of its earlier denial of the zone change request, the Council focused its attention primarily on the use to which the Property might be put were the zone change amendment not granted. The Council chose to debate the effects of a proposed subsidized housing project on the Property. The record is devoid of any evidence of the nature or origin of this proposal. While oblique reference is made in the transcript of the July 14, 1998 Council meeting to a confidential memorandum regarding the proposed housing project, neither is the memorandum in evidence nor is there any evidence describing the particulars of the proposed housing project.
This public housing alternative to the applicants' proposed project was never discussed at the June 16, 1998 public hearing on the matter. There is no evidence in the record to support the proposition, advanced by defendants, that the Council knew about or considered the public housing proposal as of the time of that public hearing. Furthermore, when an unidentified member of the public attempted to comment on the subject at the later July 14, 1998 Council meeting, the Council President responded that public comment would not be allowed. President LaGreca explained, "unfortunately, this is a reconsideration of a vote that happened during a public hearing and right now this discussion is probably just about (being constituted). [sic] I don't think we should allow any public discussion right now."
Councilwoman Williams controlled most of the discussion during the July 14, 1998 Council meeting. In seeking to secure a reversal of the Council's prior decision and explain her own change of position, she informed the Council that she had made telephone calls to surrounding communities with similar subsidized housing developments, and she had fielded numerous telephone calls from citizens who were in favor of the Council's granting the zone change request.
Specifically, she commented that the housing project "would definitely be a strain on the school system, one that we had not planned for." Williams further expounded, "section 8 housing is just a living facility. But a project of that magnitude including commercial as well as over 200 (inaudible). We have no control when something like that comes in. W/S Smithfield will work with the Town of Smithfield." Finally, Williams attempted to interpret the public's poor attendance at the July 14, 1998 Council meeting, relative to the June 16, 1998 hearing, as a sign that residents were overwhelmingly in favor of the zone change. Ignoring the fact that residents were never notified that the Council would reconsider its decision that night, she concluded that the town residents somehow "intuited" the Council's agenda and chose to show their support for the amendment by not showing up at the very hearing which would determine the issue.
Councilman Poirier, who voted to deny the zone change request at the June 16, 1998 Council meeting, was the only member of the Council who expressed disagreement with Williams' position. Poirier expressed concern that "when the issue was before the people and [the Council] had a public hearing and the people [were] present, that certain council people did take one point of view, and when the public is gone and [the Council members] are not under the close scrutiny of the public, then another point of view seems to be taken." He argued that the shopping center would not be a good development for the Town of Smithfield, and it would make a bad traffic situation worse. He pointed out that "there are all kinds of possibilities for compromise between no development and [the subsidized housing] development."
Poirier then referenced the "confidential memorandum," which evidently had been sent to the Council and "leaked to all kinds of other people." Apparently, the memorandum informed the Council as to the possibility of and nature of the proposed subsidized housing alternative. He accused other Council members of "caving in" to the subsidized housing "blackmail." He commented that what they were doing was not a reconsideration vote but an "abdication of the development interest." He also questioned the realistic nature of the proposed housing alternative. Significantly, it was when an unidentified speaker attempted to comment on the confidential memorandum referenced by Poirier that President LaGreca explained that the Council could not hear public discussion on the zone change in the context of a motion for reconsideration.
Councilwoman Bouchard, who voted to grant the zone change request at the June 16, 1998 meeting, noted that she "thought from the beginning that [the shopping center] is a worthwhile project" and she presently thought that way. She mentioned that the applicants for the zone change still faced numerous hurdles before administrative offices, zoning officials, the public works director, the police department, the fire department and the town surveyor. Later, she commented that she, like Williams, had received numerous phone calls regarding the proposed amendment. She then read a letter which she had received from a resident urging the Council to rethink its June 16, 1998 decision.
The Council thereafter voted, 4-to-1, to grant the applicants' zone change request. This time, Williams, Bouchard, Coia and President LaGreca voted in the majority. Poirier was the sole member to vote against enacting the amendment. The Council did not address whether the amendment would be in conformance with the Comprehensive Plan. It did not explain why it rejected the Planning Board's determination that the proposed amendment would not be consistent with the Comprehensive Plan. Indeed, the Council made no findings in support of its decision to grant the requested zone change. At bottom, it appears that the Council's change of position regarding the zone change was not based on a reconsideration of the merits of the proposed zone change, but on a determination that the applicants' proposed shopping center (which would require the zone change), when compared to the proposed subsidized housing development (which could occur if the zoning were left unchanged), was the lesser of two evils.[2]
Individual residents and landowners in the Town of Smithfield, who were opposed to the zone change amendment, subsequently formed a non-profit corporation, SVRD, and filed the instant suit on August 13, 1998 in the name of that organization. Plaintiff SVRD claims that the zoning amendment should be invalidated because the Council reversed its decision to deny the amendment after receiving and considering additional evidence without providing individual residents and landowners with notice and an opportunity to be heard. It also claims that the amendment should be invalidated because it does not comport with the Comprehensive Plan. Plaintiff claims further that the amendment constitutes an unlawful taking of the property of one of its members, Rhonda Kessler. The suit names as defendants individual members of the Town Council in their official capacities. W/S Smithfield and each of the eight property owners who joined in the proposal for a zone change (namely Adele G. Petrarca; B B Transportation, Inc.; Francis L. Clark; Tina M. Clark; Fred Colagiovanni; Edwin F. Day; M. Florence Day and Interchange Realty Corporation (the "applicants")) have intervened and join defendants in this appeal.
In February of 1999, the Town of Smithfield Zoning Board of Review granted to W/S Smithfield a special use permit which authorizes W/S Smithfield's proposed project on the property. On April 26, 1999, Justice Silverstein denied SVRD's motion to stay enforcement of the amendment to the zoning ordinance approved by the Council on July 14, 1998 and assigned this case for expedited decision.
 Standing
Defendants first argue that SVRD lacks standing to appeal the zoning amendment. They contend that SVRD is a corporate entity that came into being after the decision at issue, thus precluding its inclusion in one of the permitted classes of appellants under R.I. Gen. Laws § 45-24-71. SVRD responds that, notwithstanding its corporate form, it is an "association of residents and landowners" in the Town of Smithfield that can appeal a zone change amendment under that statute.
The appeal statute confers standing upon an "aggrieved party," any "legal resident or landowner of the municipality," or any "association of residents or landowners of the municipality." R.I. Gen. Laws § 45-24-71 (A). SVRD claims standing as a member of the last class of appellants. Even admitting that SVRD is a nonprofit corporation formed by legal residents and landowners, the defendants counter that corporations can never be "associations" under the definition provided in R.I. Gen. Laws § 9-2-10. While it is true that this provision defines an "association" as "any unincorporated organization of persons, except a partnership," by the very terms of this provision, this definition of association applies specifically to § §9-2-11 to 9-2-15: provisions which have no relevance to the instant appeal. Since the appeal statute as well as Title 9 are silent as to the definition of association in provisions other than §§ 9-2-11 to 9-2-15, this Court must turn to settled precepts of statutory construction.
Our Rhode Island Supreme Court is "vested with final responsibility for statutory construction." Gallison v. BristolSchool Committee, 493 A.2d 164, 166 (1985). In exercising this duty, the court will effectuate and establish the intent of the legislature. Lake v. State, 507 A.2d 1349, 1351 (1984). Absent a contrary intent, the words in the statute must be given their plain and ordinary meaning. Lake, 507 A.2d at 1351.
With those principles in mind, this Court finds that SVRD is an association within the meaning of the appeal statute. An "association" is described "as a term of vague meaning used to indicate a collection or organization of persons who have joined together for a certain or common object." Black's Law Dictionary, 121 (6th ed. 1990). In a limited sense, an association signifies "a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise." Lucas v. Extension Oil Co., 47 F.2d 65, 66 (5th Cir. 1931). However, "association" is often used as a synonym for "company" and "society." Law v. Crist, 107 P.2d 953, 955 (Cal.App. 1940). In the name of an entity, "association" is as much indicative of a corporation as the word "company." Thus, some courts, in determining whether a particular name imported a corporation, have made no distinction between the two GeorgiaCo-Operative Fire Ass'n v. Borchardt Co., 51 S.E. 429, 432 (Ga. 1905).
Here there is no question that the individual members of SVRD would be allowed standing to appeal under R.I. Gen. Laws §45-24-71 as individual residents or landowners in the Town of Smithfield. Indeed it is these individuals who arguably were "aggrieved parties" with respect to their claim that they did not receive the required public notice of the motion to reconsider advanced at the July 14, 1998 Town Council meeting or an opportunity to be heard at that meeting. See R.I. Gen. Laws §45-24-31 (4)(b).[3]
The appeal statute also would allow them, even under the defendants' reading of its language, to ban together as an unincorporated association of residents and landowners to mount an appeal. Under the plain language of the statute, it would matter not whether they associated before or after the passage of a zoning amendment for purposes of taking an appeal. It necessarily follows, therefore, that these individual residents and landowners can associate by forming a corporation to take the appeal. It would be inconsistent to allow the individuals standing as individual residents and landowners but not as a group, whether incorporated or unincorporated.[4]
Accordingly, this Court finds that SVRD has standing under R.I. Gen. Laws § 45-24-71 to appeal the zoning amendment as an incorporated "association comprised of residents or landowners of the municipality." Specifically, it has standing to assert its claim that the amendment granted by the Council on July 14, 1998 was made upon unlawful procedure in that the Council failed to give the public, including the individual residents and landowners who are members of SVRD, notice of that hearing and an opportunity to be heard. It also has standing to claim that the amendment is not in conformance with the Comprehensive Plan.[5]
This Court will proceed, therefore, to address, in seriatim, the claims plaintiff raises on appeal.
 Appellate Review of the Zoning Amendment
The parties agree, without discussion, that this Court has jurisdiction to review the Council's decision, dated July 14, 1998, under R.I. Gen. Laws § 45-24-71. This provision grants the Superior Court jurisdiction, upon an appropriate complaint, to review whether a zoning amendment is in conformance with the Comprehensive Plan and whether the amendment works as a taking of an aggrieved party's property. While SVRD makes these allegations, it argues first that the amendment was made upon unlawful procedure because the Council considered additional evidence at the July 14, 1998 meeting without giving the public, including the members of plaintiff SVRD, notice and an opportunity to be heard. Accordingly, this Court first will review the decision with respect to those alleged procedural deficiencies. See Rapthkopf, The Law of Planning and Zoning § 27.03 [3] (amendments must be enacted by following proper procedures; "a failure to follow those procedures may render the attempted amendment void upon challenge"). This Court will exercise its jurisdiction to review the Council's procedures. See
Rapthkopf, The Law of Planning and Zoning § 27.04[2][d] (acknowledging a party's ability to challenge an amendment based on a procedural defect).
 Reconsideration
The Town Council's power to amend a zoning ordinance derives from R.I. Gen. Laws § 45-24-50 "for the purpose of promoting public health, safety, morals and general welfare." To this end, the Council shall hold a public hearing within 65 days of receipt of a proposed amendment and upon giving proper notice. R.I. Gen. Laws § 45-24-51. Our Supreme Court has characterized these requirements as more than a mere formality. A meaningful public hearing is one which is properly advertised and gives interested parties the opportunity to be heard — a right which implies a "reasonable hope of being heeded." L.A. Ray Realty v. TownCouncil of Cumberland, 603 A.2d 311, 314 (R.I. 1992).
Nonetheless, the Town Council "unless restrained by charter or statute applicable possesses the undoubted right to vote and reconsider its vote upon measures before it, at its own pleasure, and to do and undo, consider and reconsider, as often as it may think proper, until by final vote or act, accepted as such by the body, a conclusion is reached." 4 McQuillan, MunicipalCorporations § 13.48 at 881 (3d ed. rev. 1969).[6] "If the law does not forbid, the legislative body may adopt its own rules of parliamentary practice as to the right and method of reconsideration. The reconsideration must be in accordance with the rules of procedure, if any, governing the body." Johnson v.Eldredge, 430 A.2d 1069, 1071 (R.I. 1981) (reargument denied 1981) (quoting McQuillan, Municipal Corporations, § 13.48 at 600 (3d ed. rev. 1969)).
Here, the rules of procedure governing the Town Council for the Town of Smithfield, which were in effect as of July 14, 1998, provide only that "motions to reconsider any matter previously resolved by vote shall be entertained only from a Council member who voted with the majority at the time of the initial decision." Smithfield Town Council Rules of Procedure, § 12. The applicable rules did not require that the parties or the public be notified and given an opportunity to be heard with respect to a motion to reconsider a prior vote of the Council made by a member who originally voted with the majority.[7]
Similarly, the parties do not argue that there was any state statutory requirement in effect as of July 14, 1998 that would have prevented a town council from reconsidering a prior vote regarding adoption, amendment or repeal of a zoning ordinance or required the town council to provide the parties and the public with notice and an opportunity to be heard regarding that reconsideration.[8] As of that time, the notice and public hearing requirement imposed by state statute with respect to the adoption, repeal or amendment of zoning ordinances by town councils (which is codified at R.I. Gen. Laws § 45-24-53) generally would have been deemed to have been satisfied, notwithstanding a subsequent non-public hearing on a motion for reconsideration, as long as notice and an opportunity to be heard was afforded the parties and the public prior to the town council's initial vote on the matter and the reconsideration vote was otherwise in conformance with town council procedures. SeeJohnson v. Eldredge, 430 A.2d at 1072. This general rule presupposes that the town council, in engaging in reconsideration, is simply rethinking its initial bottom-line decision on the merits of a zoning ordinance amendment based on the evidence presented and arguments made by the parties and the public at the original hearing such that no further public participation, or notice associated therewith, is required. Id.
The Rhode Island Supreme Court carved out an exception to this general rule, however, in Johnson v. Eldredge, 430 A.2d 1069
(R.I. 1981). In that case, which parallels the instant case in several material respects and even involved the same Town Council, the Court upheld a decision by the Smithfield Town Council to grant a zone change amendment upon its own motion for reconsideration, which occurred at a non-public meeting, because the Council had properly noticed and convened a public hearing at the time it initially denied the requested amendment and because "[no] additional evidence concerning the amendment was ever received by the Council." Id. At 1072. Under Johnson therefore, as long as a town council convenes a properly noticed public hearing as to its initial consideration of a zoning amendment and receives no additional evidence concerning the amendment in connection with its reconsideration, no additional notice or opportunity to be heard need be provided to the parties or the public with respect to reconsideration.
In this appeal, the defendants and SVRD agree that the Council held a properly advertised public hearing on June 16, 1998, in accordance with R.I. Gen. Laws § 45-24-51, before voting to deny the zoning amendment. They further agree that, at the later Council meeting of July 14, 1998, the motion to reconsider that vote was raised properly, in conformance with the Council's rules of procedure, by a Council member who voted with the majority in the initial decision. The parties also agree that the Town Council did not publicly advertise the fact that the zone change request would be on the agenda at that meeting. They further agree that the July 14, 1998 Council meeting was not a "public hearing" which afforded individual residents and landowners a chance to be heard. The parties also do not dispute that the granting of the amendment at the July 14, 1998 Council meeting would be improper, consistent with the dictates ofJohnson v. Eldredge, if the Council received and considered additional evidence. Thus, the remaining issue before this Court is whether, in fact, the Council received and considered additional evidence at the July 14, 1998 Council meeting.
It is clear to this Court from a review of the record of the Council meetings of June 16, 1998 and July 14, 1998 that the Council did receive and consider additional evidence at the July 14, 1998 meeting, without affording the public the requisite notice and an opportunity to be heard. The evidence consisted principally of a confidential memorandum regarding the proposed development of a subsidized housing project on the Property should the zone change request be denied; information concerning the effect of that proposed project, some of which was obtained by Councilwoman Williams from officials dealing with subsidized housing in other communities; telephone calls received by Williams from citizens after the close of the June 16, 1998 Council meeting; and a letter Councilwoman Bouchard received from a citizen after the close of the initial hearing. While these matters were not presented to the Council in the form of sworn testimony or exhibits, they nonetheless meet the definition of "evidence" as they are arguably probative matters that could serve to persuade the Council to grant or deny the proposed zoning amendment, as evidenced plainly by the discussion and vote on the zone change request following the motion for reconsideration. See Black's Law Dictionary at 555 (6th ed. rev. 1990) (defining evidence as "testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact").
In addition, it is clear that this evidence was "additional" to that received by the Council at the June 16, 1998 hearing. The telephone calls and letter from residents were not received by Council members until after the hearing of June 16, 1998. Similarly, the information gained from inquiry about public housing in other communities was not received until after that meeting. While the defendants suggest that information about the proposed public housing project was available to the Council as of the initial hearing, there is no record support for that proposition. There is no mention of the public housing project or the confidential memorandum regarding it in the record of the June 16, 1998 hearing. No mention is made of a proposed public housing project until the meeting of July 14, 1998. The substance of the discussion at the latter meeting regarding subsidized housing (especially when considered in light of the absence of such discussion at the June 16, 1998 meeting) suggests that evidence about the proposed subsidized housing project was not received or considered by the Council until after the June 16, 1998 hearing. Even if it could be argued that this evidence existed as of the date of the earlier hearing, it is clear that the evidence was "additional" because it was not presented or discussed at the June 16, 1998 Council meeting and thus never subject to scrutiny at a public hearing.
Moreover, it was the prospect of subsidized housing being developed on the Property, were a zone change not granted, that prompted the Council's motion for reconsideration and its ultimate change in position with regard to the requested zoning amendment. But for the additional evidence, the record discloses no basis for the Council's vote on July 14, 1998 to reconsider its earlier vote and grant the requested zone change. It was not simply a case of the Council reconsidering its earlier vote by taking into account other general potential uses (including subsidized housing) to which the Property could be put, as defendants suggest, but of the Council revisiting its earlier denial of the amendment based on new evidence regarding a specific proposed public housing development that had been brought to its attention.
Consistent with the dictates of Johnson, by receiving and considering this additional evidence and by not ever allowing that evidence to be presented and discussed at a public hearing, the Council triggered the prerequisite of providing the parties and the public with notice and an opportunity to be heard with regard to it before proceeding to vote to grant the requested zone change. This case is thus distinguishable from Johnson where there was no evidence that the Council received additional evidence before voting to change its mind with respect to a zone change request. Here there is evidence that the Council did not simply revisit the zone change request based on the evidence it had received at the June 16, 1998 hearing but instead that it did the opposite: it revisited its earlier vote based on additional information received after and never considered at that initial hearing.[9]
The failure to give notice and an opportunity to be heard with regard to this additional evidence might be deemed mere technical noncompliance with the dictates of R.I. Gen. Laws §45-24-53, insufficient to invalidate the Council's decision to grant the zoning amendment, were there evidence that the residents and landowners that comprise the plaintiff corporation SVRD received actual notice of the motion to reconsider entertained at the July 14, 1998 Council meeting or that they were present at that meeting and allowed to participate See,e.g., Cranston Ford Sales v. R.I. Motor Comm., C.A. 90-3971, April 20, 1994, Wiley, J. (since the plaintiff was present at the Commission's reconsideration of a prior vote and participated therein, the plaintiff waived its right to claim a violation of its due process rights due to the Commission's failure to post notice of that reconsideration vote pursuant to the Open Meetings Law, R.I. Gen. Laws § 42-46-6); Johnson v. Eldredge, 430 A.2d at 1070 (court noted, in approving reconsideration vote taken without affording the plaintiff or the public notice and an opportunity to be heard, that plaintiff had been present at the council meeting where the vote was taken); State v.Sikhaolouanglath, 683 A.2d 376, 377 (R.I. 1996) (Rule 32 (f) notice which did not describe defendant was merely technical noncompliance with the rule which did not violate due process; his name was stated and by reference to the attached reports, defendant was adequately put on notice as to why he was being charged as a violator); State v. DesRosiers, 559 A.2d 641, 644 (R.I. 1989) (refusing to vacate a probation-violation finding "because of technical noncompliance with" the notice provisions of Rule 32 (f) of the Superior Court Rules of Criminal Procedure "when the defendant was in fact aware of the exact grounds for the alleged violation" such that he was afforded due process). There is no evidence in this case, however, that any of the individual residents and landowners who are members of SVRD were present at the July 14, 1998 Council meeting. Even if they were, neither they nor any other member of the public was given an opportunity to participate by virtue of the directive of the Town Council President, who would not allow members of the public an opportunity to be heard.
Moreover, had the Council given notice to residents and landowners in advance of the July 14, 1998 Council meeting that it would be entertaining a vote to reconsider its decision of June 16, 1998 denying the zone change, and had it discussed the additional evidence and given the public a right to be heard at the July 14, 1998 Council meeting, the course of the Council meeting and the resulting Council decision might well have been different. Had the Council advertised to the public, in advance, that it would be holding a public hearing to reconsider the applicants' zone change request to allow for construction of a shopping center in light of the alternative subsidized housing project proposed for the Property, presumably more people, including members of plaintiff SVRD, would have attended the meeting of July 14, 1998. The absence of people at that meeting would not then have been falsely attributed to support for granting the amendment. The public would have been allowed an opportunity to learn the details of the proposed public housing project (which are conspicuously absent from the record of the July 14, 1998 meeting due in large part to the non-public character of the meeting) and to ensure that proposal was real. In addition, the public arguably would have been allowed to express its views on a broader array of subjects than those which were presented and discussed at the meeting of June 16, 1998. The issue for public discussion would not have been simply whether the zoning ordinance should be changed to allow applicants to build a shopping center (as opposed to maintenance of the status quo) but whether the proposed shopping center project was superior or inferior to a proposal to build public housing. Proponents or opponents of public housing might well have had a reason to participate in the meeting of July 14, 1998 that they did not have at the meeting of June 16, 1998. All of this scrutiny of the additional evidence and public participation, or a lack thereof with respect to it, may have guided the Council on how to proceed. Having to discuss reconsideration publicly and justify its decision to reverse itself may have affected how the Council addressed the zone change request and its ultimate decision with respect to that request. After all, the hearing where the public was given notice and an opportunity to be heard produced a vote on the zoning amendment opposite to that taken when public notice did not occur and public participation was barred.
While "broad latitude is given to legislative bodies such as the Town Council in their legislative determinations, and it is not the province of the court to monitor the inputs into each legislative decision," Smithfield Concerned Citizens v. Town ofSmithfield, 907 F.2d 239, 245 (1st Cir. 1990), this latitude does not free the Council from the procedural prerequisites of affording the public notice and an opportunity to be heard on matters of reconsideration where it has received and considered additional evidence after an initial public hearing. R.I. Gen. Laws § 45-24-53; Johnson v. Eldredge, 430 A.2d at 1072. This Court's decision, then, is not about the product of the July 14, 1998 Council meeting (namely the granting of a zoning amendment) but about its process: the enactment of a zoning amendment after the receipt and consideration of evidence never subject to public scrutiny and debate. The Council's failure in this case, given its receipt and consideration of this additional evidence, to afford the public, including the individual residents and landowners who are members of plaintiff SVRD, with notice and an opportunity to be heard regarding its reconsideration of its previous decision to deny the applicants' zone change request, is fatal to the Council's decision to reverse itself and grant the requested zoning amendment. Accordingly, the Council's decision of July 14. 1998 to amend the zoning ordinance must be invalidated.[10]
 Conclusion
The plaintiffs appeal is sustained for the reasons set forth in this decision. The decision of the Smithfield Town Council, dated July 14, 1998, which granted the applicants' request to amend the zoning ordinance, being made upon unlawful procedure, is hereby declared null and void and vacated. Counsel for the parties are directed to agree upon a form of judgment, reflective of this decision, and submit it to the Court forthwith for entry.
[1] Under R.I. Gen. Laws § 45-24-51, the city or town council shall hold a public hearing within sixty-five (65) days of receipt of a proposed zoning amendment and upon giving proper notice as prescribed in § 45-24-53. Section 45-24-53 details the minimum notice requirements, providing, in part, that "the city or town council shall first give notice of the public hearing by publication of notice in a newspaper of general circulation within the city or town at least once each week for three (3) successive weeks prior to the date of the hearing, which may include the week in which the hearing is to be held, at which hearing opportunity shall be given to all persons interested to be heard upon the matter of the proposed ordinance."
The Smithfield Town Charter, § 2.13, provides that the Council shall hold a public hearing on a proposed ordinance following the publication, by at least seven (7) days, in one or more newspapers of general circulation in the town.
[2] Rhode Island law imposes a solemn obligation upon a town council, before granting a zoning amendment, to ensure that the amendment comports with the comprehensive plan. See R.I. Gen. Laws §§ 45-24-50, 45-22.2-13 (C). This obligation cannot be met absent consideration of the merits of the requested zone change, any planning board recommendations, and the evidence regarding conformance of the proposed amendment with the comprehensive plan. Findings help explain and justify a decision to grant an amendment to a zoning ordinance to the public and the reviewing court and provide assurance that the town council has satisfied its obligation to ensure that its land use decisions are in conformance with the approved municipal comprehensive plan.
[3] R.I. Gen. Laws § 45-24-31 (4)(b) defines an "aggrieved party" as anyone requiring notice under chapter 24 of Title 45. R.I. Gen. Laws § 45-24-53 details the minimum notice requirements, providing, in part, that "the city or town council shall first give notice of the public hearing by publication of notice in a newspaper of general circulation within the city or town at least once each week for three (3) successive weeks prior to the date of the hearing, which may include the week in which the hearing is to be held, at which hearing opportunity shall be given to all persons interested to be heard upon the matter of the proposed ordinance."
[4] Notwithstanding the plain language of the appeal statute, defendants nonetheless argue that the statute cannot be construed to allow landowners and residents to form a non-profit corporation for purposes of taking an appeal as that construction would eviscerate the provision of the appeal statute, R.I. Gen. Laws § 45-24-71 (F), that allows defendants to recover attorneys' fees, in the discretion of the court, in connection with an appeal. They contend that non-profit corporations are likely to have no assets against which to levy to collect such attorneys' fees and that its members and officers are exempt from personal liability under R.I. Gen. Laws §§ 7-6-9 and 7-6-15.
There is nothing in the provisions of the R.I. Gen. Laws § 45-24-71 (F), however, that would prevent the court from awarding attorney's fees as against a non-profit corporation in connection with its appeal of a decision to enact or amend a zoning ordinance. The ability of a defendant to collect those fees, if awarded, should not be determinative of whether the opposing party may take an appeal in the first instance.
Moreover, defendants' argument ignores the fact that directors, officers, volunteers and trustees of non-profit corporations can be held personally liable for conduct which is malicious, willful or wanton or taken in bad faith. See R.I. Gen. Laws §§ 7-6-6, 7-6-9. Indeed conduct of that nature could arguably jeopardize the legal status of the non-profit corporation itself. Allowing individual landowners and residents to form a non-profit corporation for appeal purposes, therefore, does not negate the attorneys' fee provision of the statute but may in fact allow those individuals the right to appeal, without undue fear of personal liability, subject only to the requirement that the appeal be taken in good faith.
[5] SVRD does not have standing, however, as an association of residents and landowners, to claim on appeal that the amendment constitutes an unlawful taking of Rhonda Kessler's property. Such an appeal only can be filed by an aggrieved party. R.I. Gen. Laws § 45-24-71 (D). An "aggrieved party," for purposes of a takings claim, is "any person or entity who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or a town." Id. As the alleged injury to property from an unlawful taking was suffered not by SVRD but by Kessler individually, it is she who must appeal.
[6] This law governing reconsideration by legislative bodies is distinguishable from that under the theory of administrative finality applicable to agencies. Under the latter doctrine, "where a zoning board hears an application for relief and denies it, the board is barred from hearing an application for identical relief absent a showing of a change in material circumstances."Audette v. Coletti, 539 A.2d 520, 521-522 (R.I. 1988). The doctrine of administrative finality, however, addresses review of final administrative orders and in no way precludes the Council's legislative actions to reconsider a vote. See Dal Maso v. Boardof County Commissioners of Prince George's County, 34 A.2d 464, 467 (Md. 1943) (a board or agency given legislative powers may reconsider a vote just as the legislature may do so); Alianiellov. Town Council of the Town of East Providence, 117 A.2d 233
(R.I. 1955) (town council acts as a legislative body when it votes to amend a town zoning ordinance).
[7] According to plaintiff, these rules of procedure were amended in 1998, after the decision in question, to provide for greater openness and public participation.
[8] The Open Meetings Law, which was amended on July 20, 1998 (less than a week after the decision at issue) and became effective on passage, now limits the right of a public body to add unadvertised items to the agenda by majority vote: "such additional items shall be for informational purposes only and may not be voted on except where necessary to address an unexpected occurrence that requires immediate action to protect the public or to refer the matter to an appropriate committee or another body or official." R.I. Gen. Laws § 42-46-6. Had this amendment been in effect as of July 14, 1998, the Council arguably would have been in violation of its provisions (notwithstanding the substance of its own rules of procedure) by voting on the zone change amendment at the meeting on that date without first granting the public notice and an opportunity to be heard.
[9] One can only imagine the reaction the applicants would have had to such Council action had the shoe been on the other foot. Surely the applicants would cry foul had they been granted a zone change at the original hearing and then been denied it at a subsequent hearing, on a motion for reconsideration, without notice to them or the public. This outrage would grow if they learned that the reversal was based on confidential information the Council received, not presented at the initial hearing, that the applicants intended to build a public housing complex on the property if their request was denied and the Council's view that such public housing would be preferable to a shopping center.
[10] As a result of that invalidation, there is no need for this Court to address plaintiff's claim that the amendment violates the Comprehensive Plan.