PD-1626-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/26/2014 2:23:06 PM
Accepted 12/30/2014 9:33:23 AM
ABEL ACOSTA
CLERK

In the Court of Criminal Appeals of Texas
No.# PD-1626-14

on Petition for Discretionary Review of the following:

**09-13-00075-CR**
**09-13-00072-CR**

IN THE COURT OF APPEALS
FOR THE NINTH DISTRICT OF TEXAS

**RAMIRO TREVIÑO, JR. VS. STATE OF TEXAS**

ON DIRECT APPEAL FROM THE 355TH DISTRICT COURT OF
MONTGOMERY COUNTY
TRIAL COURT NO.12-06-06351-CR

\* \* \* \* \* \* \* \* \* \*

Appellant's Petition for Discretionary Review

**\* \* \* \* \* \* \* \* \* \***

Larry Warner

Counsel for Petitioner

3109 Banyan Circle

Harlingen, Texas 78550

Phone (956)230-0361

email: office@larrywarner.com

website: www.larrywarner.com

Texas Bar#20871500;USDC,SDTX 1230; Board Certified, Criminal Law, Texas Board of Legal Specialization(1983)

Member of the Bar of the Supreme Court of the United States (1984)

FILED IN
COURT OF CRIMINAL APPEALS

December 30, 2014

ABEL ACOSTA, CLERK

Page 1 of 25

Pursuant to *TEX.R.APP.P.68.4,Appellant provides the following identity of parties and counsel:*

## Identity of parties and counsel

PARTIES AND INTERESTED PERSONS

1. Ramiro Treviño, Jr., Appellant

2. Hon. Larry Warner, Attorney for Appellant, 3109 Banyan Drive, Harlingen, Tx 78550, Attorney for Appellant

3. MR. ROBERT ARNOLD FREYER, JR. SBOT NO. 00798189

4. MR. VINCENZO JOSEPH SANTINI SBOT NO. 24064310 Montgomery County District Attorney's Office 207 West Phillips, 2nd Floor, Conroe, Texas 77301 Telephone: 936-539-7800

   Counsel for The State of Texas

5. MR. BENTON BAKER IV SBOT NO. 24006785

   Baker & Beck, PLLC Attorneys at Law 14 "Old Montgomery County Courthouse" 202 Avenue A, Conroe, Texas 77301 Telephone: 936-494-2444 16

   Counsel for Defendant

Pursuant to TEX.R.APP.P.68.4(a), Petitioner provides this Table of Contents with reference to the pages of the Petition, indicating the subject of each ground or question presented for review.

## TABLE OF CONTENTS

PAGE

Table of Contents . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . . iv-v

Statement re oral argument . . . . . . . . . . . . vi

Statement of the case . . . . . . . . . . . . . . . . 1

Statement of procedural history . . . . . . . . . . 2-3

Grounds for Review . . . . . . . . . . . . . . . . . 4

1. How should a Court of Appeals apply the doctrine of affirmative links to determine if a rational jury could have found such a connection based on a particular quantity of evidence? Has the Court of Appeals misconstrued the rule of "affirmative links"? TEX.R.APP.P.66.3(d)

2. While Texas' not defining reasonable doubt is intellectually defensible, should the Court of Criminal Appeals reinstate the prior practice of defining the term as a purely practical measure?

Should the Court of Criminal Appeals grant this petition within the measure of its full discretion?

TEX.R.APP.P.66.3(d)


3. Did the Court of Appeals misconstrue the rule that the Judge not comment on the weight of the evidence? TEX.CODE CRIM.P.38.05; TEX.R.APP.P.66.3(d) Since the Trial Judge on his own motion commented four times that the policeman "had cartel training", should the Court of Criminal Appeals emphasize the Trial Judge's duty not to comment on the weight of the evidence lest he deprive the defendant of a fair trial? TEX.CONST.art.I,sec.10; U.S.CONST.amend.VI

Argument . . . . . . . . . . . . . . . . . . . . . .   5-13

Prayer for Relief...................................13

Appendix........................................ 14

Pursuant to TEX.R.APP.P.68.4(b), Petitioner provides an Index of Authorities, arranged alphabetically and indicating the pages of the petition where the authorities are cited.

# INDEX OF AUTHORITIES

**CASES:** **PAGES**

Arnulfo MOLINA, Appellant, v. The STATE of Texas, **Nos. 205-03, 206-03.Oct. 1, 2003. 2003 WL 22250391 . 10-11**

Barnes v. State Bar of Texas,**888 S.W.2d 102(Tex.App.–Corpus Christi 1994) . . . . . . . . . 18**

Blue v. State,**41S.W.3d129(Tex.Crim.App.2000) . . 21-22**

Com. v. Stellberger, **25 Mass. App. Ct. 148, 515 N.E.2d 1207 (1987) . . . . . . . . . . . . . . . . . . . 16**

Drake v. State,**80 S.W.1005(Tex.Crim.App.1904) . . 19-20**

Friedman v. U.S., **381 F.2d 155 (8th Cir. 1967) . . . 16**

Fuller v. State,**363 S.W.3d 583(Tex.Crim.App.2012) . . 19**

Geesa v. State,**820 S.W.2d 154(Tex.Crim.App.2000) . . 18**

Guiton v. State,**742 S.W.2d 5(Tex.Crim.App.1987) . . 8-10**

Herndon v. State, **Court of Criminal Appeals of Texas, En Banc.April 11, 1990 787 S.W.2d 408 . . . . . . . . 11**

Hicks v. Oklahoma,**447 U.S.343(1980) . . . . . . . . 14**

Paulson v. State, **28 S.W.3d 570(Tex.Crim.App.2000) . 18**

State v. Bennett,**161 Wash.2d 303,165P.3d 1241(2007) . 16**

State v. Desrosiers, **559 A.2d 641 (R.I. 1989) . . . . 16**

State v. Wakefield, **190 N.J.397, 921 A.2d 954(2007) . 16**

Taylor v. State, **505 S.W.2d 927 (Tex. Cr.App.1974) . 11**

U.S. v. Delibac, **925 F.2d 610 (2d Cir. 1991) . . . . 16**

U.S. v. Lanham, **416 F.2d 1140 (5th Cir.1969) . . . . 21**

U.S. v. Pepe, **501 F.2d 1142 (10th Cir. 1974) . . . . 16**


CONSTITUTIONS, CODES AND RULES

TEX.CODE CRIM.P.38.05 . . . . . . . . iv, vii, 7, 20-21

TEX.CONST.art.I,sec.10 . . . . . . . . . . . . . iv, 7

TEX.CONST.art.I,secs.13 & 19 . . . . . . . . . . . . . . . 14

TEX.PENAL CODE 1.07 . . . . . . . . . . . . . . . . . . . 18

TEX.R.APP.P.66.3(d) . . . . iii, iv, 5-8, 12, 15,16, 20

U.S.CONST.amend.VI . . . . . . . . . . . . . . iv, 7, 20

U.S.CONST.,amend.XIV . . . . . . . . . . . . . . . . . . 14

**WEBSITES**

FED-JI § 12:10, 1A Fed. Jury Prac. & Instr. § 12:10 (6th ed.)Federal Jury Practice And Instructions Criminal,Database updated August 2014 . . . . . . . . 17

h t t p : / / w w w . t x c o u r t s . g o v / media/652326/CCA-activity-2014.pdf(accessed December 15, 2014) . . . . . . . . . . . . . . . . . . . . . . . . 13

WestlawNext: adv: ["AFFIRMATIVE LINKS" & DA(aft2004)](accessed December 15, 2014) . . . . . . 14

www.uscourts.gov/Common/FAQS.aspx(accessed December 17, 2014) . . . . . . . . . . . . . . . . . . . . . . . . 17

http://www.ussc.gov/sites/default/files/pdf/ research-and-publications/research-publications/2014/FY1 3_Overview_Federal_Criminal_Cases.pdf (accessed December 17, 2014) . . . . . . . . . . . . . . . . . . . . . . 17

Pursuant to TEX.R.APP.P. 68.4(c), Petitioner includes a short statement of why oral argument would be helpful.

## Statement re Oral Argument

Oral argument would be helpful to the decisional process because counsel and the Judges of the Court of Criminal Appeals could discuss measuring the legal sufficiency of the evidence in every "affirmative links" case.

Oral argument would be useful since the Court and Counsel could discuss the importance of an example of insufficient affirmative links.

An example of insufficient affirmative links would help the judges and the lawyers in Texas in comparing their cases with the example.

The Court and Counsel could discuss whether Texas' failure to define reasonable doubt, while intellectually defensible, is impracticable, as exemplified by the jury's request for a definition in this case, and the state's prior longtime practice of defining the term.

The Court and Counsel could discuss whether the Court should emphasize to Trial Judge's throughout Texas that they must not comment on the weight of the evidence, as the Judge did here in saying: "THE COURT: Okay. I believe that he told us he had cartel training." (Court Reporter's Record Volume 3, Page 244-245)

They could discuss whether the Court of Appeals misconstrued TEX.CODE CRIM.P.art.38.05 in determining that

the comment did not deprive the defendant of a fair trial.
TEX.CONST.art.I,sec.10;U.S.CONST.amend.VI

Pursuant to TEX.R.APP.P.68.4(d), Petitioner provides a statement of the case, noting briefly the nature of the case, and reserving the details of the case for statement with the pertinent grounds or questions.

## Statement of the case

The defendant was indicted for possession of a controlled substance with intent to deliver. (Clerk's Record, Count I Indictment, Page 14)(Clerk's Record, Count II Indictment, Page 22)

The defendant pleaded not guilty and tried the matter to a jury. (Clerk's Record Count I, Final Judgment, Page 101)(Clerk's Record, Count II Final Judgment, Page 109)

The jury found the defendant guilty as charged.(Clerk's Record Count I, Final Judgment, Page 101)(Clerk's Record, Count II Final Judgment, Page 109)

The trial court sentenced the defendant to a term of confinement in the penitentiary.(Clerk's Record Count I, Final Judgment, Page 101)(Clerk's Record, Count II Final Judgment, Page 109)

Petitioner timely filed a Notice of Appeal to the Court of Appeals for the Ninth Judicial District of Texas.

(Clerk's Record Count I, Notice of Appeal, Page 98)(Clerk's Record, Count II Notice of Appeal, Page 113)

The Court of Appeals for the Ninth Judicial District affirmed the judgment of conviction and sentence imposed.

Petitioner timely filed Motions for Rehearing and Rehearing En Banc. The Court of Appeals overruled both Motions.

Petitioner sought and was granted an extension of time to file this Petition for Discretionary Review from the original due date of December 13, 2014 until a new due date of January 14, 2015.

Petitioner timely files this Petition for Discretionary Review.

Pursuant to TEX.R.APP.P.68.4(e), Petitioner provides a Statement of Procedural History.

## Statement of the Procedural History of the Case

The court of appeals is the Court of Appeals for the NINTH District of Texas.

Re: TEX.R.APP.P.10.5(b)(3)(B), the date of Court of Appeals' judgment is October 22, 2014.

Re: TEX.R.APP.P.10.5(b)(3)(C) the case number in the Court of Appeals is No. 09-13-00075-CR & 09-13-00072-CR.

Re: TEX.R.APP.P.10.5(b)(3) (D), the date every motion for rehearing or en banc reconsideration was filed on November 5, 2014.

On November 5, 2014, Petitioner filed both Motions for Rehearing and Motion for Rehearing En Banc.

On December 12,2014, Petitioner sought and was granted an extension of thirty days to file the Petition for Discretionary Review. This Court granted an extension to file the pdr until Jaunary 14, 2015.                    .

This Petition for Discretionary Review is efiled by filing electronically on Efile.TXCourts.gov.

Pursuant to TEX.R.APP.P.68.4(f), Petitioner states briefly, without argument, the questions presented for review, expressed in the terms and circumstances of the case, but without unnecessary detail.

## GROUNDS FOR REVIEW

Summary

1. Has the Court of Appeals misconstrued the rule on "affirmative links"?TEX.R.APP.P.66.3(d) How should a Court of Appeals apply the doctrine of affirmative links to determine if a rational jury could have found such a connection based on a particular quantity of evidence?

The Court of Appeals misconstrued the rule on affirmative links. The controlled substance was in a bag, inside another bag, inside a compartment, under a mattress, inside a private sleeping compartment, on a public bus, on which were thirty-seven passengers and a driver. There were no fingerprints. Appellant had only a small amount of money and was not under the influence of any intoxicating substance.

The Court of Criminal Appeals should grant this petition and allow full briefing on the construction and

application of the rule on affirmative links.

2. Should the Court of Criminal Appeals grant this petition within the measure of its full discretion and reconsider defining reasonable doubt as a purely practical measure? TEX.R.APP.P.66.3(d) While Texas' not defining reasonable doubt is intellectually defensible, should the Court of Criminal Appeals reinstate the prior practice of defining the term as a purely practical measure?

Texas' not defining reasonable doubt is intellectually defensible...but impracticable, as demonstrated by the jury's having asked for a definition in this very weak affirmative links case. Only Texas and Rhode Island do not define reasonable doubt. Texas used to define reasonable doubt, from the Republic to the modern age. Every United States District Court defines reasonable doubt in every criminal case.

In the full measure of its discretion, the Court of Criminal Appeals should reconsider its decision. It should grant this petition and allow full briefing on whether it

should reinstate the prior practice of defining reasonable doubt. TEX.R.APP.P.66.3

3. Did the Court of Appeals misconstrue the rule that the Judge not comment on the weight of the evidence? TEX.CODE CRIM.P.38.05; TEX.R.APP.P.66.3(d)Since the Trial Judge on his own motion commented four times that the policeman "had cartel training", should the Court of Criminal Appeals emphasize the Trial Judge's duty not to comment on the weight of the evidence lest he deprive the defendant of a fair trial? TEX.CONST.art.I,sec.10; U.S.CONST.amend.VI

## GROUNDS FOR REVIEW

### The error

1. The Court of Appeals for the Ninth Judicial District has decided an important question of state law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals. TEX.R.APP.P.66.3(c)

### The important question of state law

2. The important question is: How should a Court of Appeals apply the doctrine of affirmative links to determine if a rational jury could have found such a connection based on a particular quantity of evidence?

### Conflict with applicable decisions of the Court of Criminal Appeals

The decision of the Court of Appeals for the Ninth Judicial District conflicts with the decision of the Court of Criminal Appeals in **Guiton v. State**,742 S.W.2d 5(Tex.Crim.App.1987)

The prosecution had better evidence against Guiton than it did against Treviño, but the Court of Criminal Appeals found the evidence insufficient.

> "In the instant case, the State sought only to establish a relationship between appellant and the motel room. No further attempt was made to link appellant to the heroin. There is no evidence that the black suitcase found in the room was the same black suitcase carried by appellant at the airport. There is no evidence to show that the heroin was ever carried in the black suitcase. There is no evidence that appellant placed the heroin in the chair cushion. There is nothing in the record that would even suggest that appellant knew that the cushion of the chair contained heroin. To convict an individual of a criminal offense, as was done in this case, simply because authorities have found contraband in the furnishings of a motel room which he has just rented and which obviously sees an immense amount of turnover among clientele, without some connection between the individual and the contraband would amount to a grave injustice. While the evidence strongly suggests that the appellant knew the heroin was located in the chair cushion in the hotel room, there is little, if any, evidence affirmatively linking the appellant to the heroin to such an extent that it may be inferred that he exercised care, custody, control, or management over the heroin. Had the contraband been found in a personal item in which ownership could have been attributed to appellant, as in *Curtis v. State, supra,* our decision would of course be different. But control of a motel room in and of itself is not synonymous with control of the contraband when the appellant does not have sole access." **Guiton**

**v. State**,742 S.W.2d 5(Tex.Crim.App.1987)

See also: Court of Criminal Appeals of Texas.

Arnulfo MOLINA, Appellant, v. The STATE of Texas, Nos. 205-03, 206-03.Oct. 1, 2003. 2003 WL 22250391 After a bench trial, defendant was convicted in the 147th Judicial District Court, Travis County, Fred A. Moore, J., of possession of more than five pounds but less than 50 pounds of marihuana and possession of at least 400 grams of cocaine. Defendant appealed. The Austin Court of Appeals affirmed. On discretionary review, the Court of Criminal Appeals, Womack, J., held that: (1) defendant's knowledge of the mere presence of drugs in the car was insufficient to establish defendant's knowledge of his possession of those drugs, and (2) evidence was not sufficient to establish that defendant possessed marihuana and cocaine.Reversed and remanded.

Conviction for possession of phenylacetone was not sufficiently supported by evidence that defendant had attempted to "run off" two undercover officers who had set

up surveillance nearby house where chemical was found, and that he attempted to flee when raid began; circumstantial evidence did not affirmatively link defendant to controlled substance found within residence, in that there was no evidence of defendant's care, custody or control of drugs found. **Herndon v. State**, Court of Criminal Appeals of Texas, En Banc.April 11, 1990 787 S.W.2d 408

\*\*\*

505 S.W.2d 927 Court of Criminal Appeals of Texas. Randell Ray TAYLOR, Appellant,v.The STATE of Texas, Appellee.No. 46129.Feb. 27, 1974.The 24th Judicial District Court, Calhoun County, Joe E. Kelly, J., found defendant guilty of possession of marijuana, and defendant appealed. The Court of Criminal Appeals, Roberts, J., held that finding nine marijuana seeds having total weight of .19 gram in various locations on floor of defendant's automobile which was occupied by defendant and others was insufficient to sustain conviction. Reversed and remanded.

\*\*\*

Pursuant to TEX.R.APP.P.68.4(g), Petitioner provides a direct and concise argument, with supporting authorities, amplifying the reasons for granting review.

## ARGUMENT

**The error**

1. Has the Court of Appeals misconstrued the rule on "affirmative links"? TEX.R.APP.P.66.3(d) How should a Court of Appeals apply the doctrine of affirmative links to determine if a rational jury could have found such a connection based on a particular quantity of evidence?

The Court of Appeal misconstrued the rule on affirmative links. The controlled substance was in a bag, inside another bag, inside a compartment, under a mattress, inside a private sleeping compartment, on a public bus, on which were thirty-seven passengers and a driver. There were no fingerprints. Appellant had only a small amount of money and was not under the influence of any intoxicating substance.

The Court of Criminal Appeals should grant this petition and allow full briefing on the construction and application of the rule on affirmative links.

## The important question of state law

The important question is: How should a reviewing court determine if the evidence presented showed an affirmative link between the defendant and the contraband?

**This Petition for Discretionary Review in Context of All Petitions Decided and Pending**

The Office of Court Administration provides the following information as of December 15, 2014:

> "Granted Petitions for Discretionary Review 84 129 213 140 73
>
> Petitions for Discretionary Review (includes Granted MRH & Reinstated) 307 1,459 1,766 1,492 274
>
> Redrawn Petitions for Discretionary Review 13 88 101 97 4"

The first number is pending as of September 1, 2013. The second is cases added. The third is the total on the docket. The fourth is dispositions. The fifth is pdr's pending as of August 14, 2014. http://www.txcourts.gov/media/652326/CCA-activity-2014.pdf(accessed December 15, 2014).

In the last ten years, there have been 554 Texas

appellate cases noted by WestlawNext involving "affirmative links". WestlawNext: adv: ["AFFIRMATIVE LINKS" & DA(aft2004)](accessed December 15, 2014).

The Court of Criminal Appeals should conclude that the correct application of the doctrine of affirmative links presents an "important question of state...law".

No one should be deprived of liberty without due course of law. TEX.CONST.art.I,secs.13 & 19

The Court of Criminal Appeals should make sure that the Courts of Appeal apply the doctrine of affirmative links correctly.

A state must enforce its own law, lest it deprive persons of liberty without due process of law. U.S.CONST.,amend.XIV; **Hicks v. Oklahoma**,447 U.S.343(1980) The Court of Criminal Appeals can enforce its own law by supervising the Courts of Appeals' application of the doctrine of affirmative links.


**The Court of Appeals incorrectly applied the doctrine of "affirmative links".**

In this case the controlled substance was in a bag, inside another bag, inside a compartment, under a mattress, inside a private sleeping compartment, accessed through a door. Passenger(Appellant) was among 37 passengers and a driver on a public bus. He was seated three rows away from the private sleeping compartment. He had no controlled substance on his person. He was not under the influence of any intoxicating material.

*\*\**

2. Should the Court of Criminal Appeals grant this petition within the measure of its full discretion and reconsider defining reasonable doubt as a purely practical measure? TEX.R.APP.P.66.3(d) While Texas' not defining reasonable doubt is intellectually defensible, should the Court of Criminal Appeals reinstate the prior practice of defining the term as a purely practical measure?

Texas' not defining reasonable doubt is intellectually defensible...but impracticable, as demonstrated by the jury's having asked for a definition in this very weak

affirmative links case. Only Texas and Rhode Island do not define reasonable doubt. Texas used to define reasonable doubt, from the Republic to the modern age. Every United States District Court defines reasonable doubt in every criminal case.

In the full measure of its discretion, the Court of Criminal Appeals should reconsider its decision. It should grant this petition and allow full briefing on whether it should reinstate the prior practice of defining reasonable doubt. TEX.R.APP.P.66.3

Many Courts require the trial court judge to instruct the jury on reasonable doubt. U.S. v. Delibac, 925 F.2d 610 (2d Cir. 1991); Friedman v. U.S., 381 F.2d 155 (8th Cir. 1967); U.S. v. Pepe, 501 F.2d 1142 (10th Cir. 1974); Com. v. Stellberger, 25 Mass. App. Ct. 148, 515 N.E.2d 1207 (1987); State v. Desrosiers, 559 A.2d 641 (R.I. 1989); State v. Bennett, 161 Wash. 2d 303, 165 P.3d 1241(2007)

Some Courts require specific language. State v. Wakefield, 190 N.J. 397, 921 A.2d 954 (2007), cert.

denied, 128 S. Ct. 1074 (U.S. 2008) (trial courts are not to deviate from prescribed definition; failure to adhere to definition, over objection, runs risk of reversible error).

In every criminal trial before a United States District Court, the following definition is impelled:

> "A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs."FED-JI § 12:10, 1A Fed. Jury Prac. & Instr. § 12:10 (6th ed.)Federal Jury Practice And Instructions Criminal,Database updated August 2014

"In total there are 94 U.S. district courts." www.uscourts.gov/Common/FAQS.aspx(accessed December 17, 2014) There were more than 2,400 federal criminal trials in 2013. http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2014/FY13_Overview_Federal_Criminal_Cases.pdf (accessed December 17, 2014)

Lawyers have long been able to make a good-faith argument for a modification or reversal of existing law. DR 7-102(A)(2) **Barnes v. State Bar of Texas**,888 S.W.2d 102(Tex.App.-Corpus Christi 1994) Counsel notes and considers that there were three concurring and three dissenting opinions in **Paulson v. State**, 28 S.W.3d 570(Tex.Crim.App.2000), which overruled **Geesa v. State**,820 S.W.2d 154(Tex.Crim.App.2000), **Geesa** requiring a definition of reasonable doubt and **Paulson** noting that such a definition was not necessary.

This Court reexamined **Geesa** in **Paulson**. It should reexamine **Paulson**. It is simply not true that reasonable doubt has a commonly accepted meaning, any more than "criminally negligent" or "knowingly" or "intentionally" have commonly accepted meanings. That is why TEX.PENAL CODE 1.07 defines those terms, which one might hear in everyday meaning. They are words of are, even though one might hear them used in common speech. More importantly, they are critical to the just factfinding and legal disposition of criminal cases. One criminally negligent

ought not to be found guilty of intentional murder. So, we define the difference.

Recently This Court determined that an individual lawyer in a particular case could ask a specific veniremember how she felt about the federal definition of reasonable doubt. **Fuller v. State**,363 S.W.3d 583(Tex.Crim.App.2012) Wouldn't it be more effective, more practical to return to the practice of having the very Trial Judge simply tell the jury what reasonable doubt means?

While one may not generalize from the specific, **Fuller** is some evidence that This Court's intellectual approach to not defining reasonable doubt is not working. It should pay attention to the 94 federal trial courts and their 2,400 criminal trials in 2013 in which the very Judge simply defined the term.

This Court should reconsider **Paulson**...and **Geesa**. This Court has in the past noted the need for "practical definition" (of a cause of provocation) and considered that the absence of a practical definition was "calculated

to confuse and mislead".**Drake v. State**,80 S.W.1005(Tex.Crim.App.1904)

So it is with the absence of a definition of reasonable doubt...witness the jury's request for one at the instant trial.

The Court should grant this petition and allow full briefing.


3. Did the Court of Appeals misconstrue the rule that the Judge not comment on the weight of the evidence? TEX.CODE CRIM.P.38.05; TEX.R.APP.P.66.3(d)Since the Trial Judge on his own motion commented four times that the policeman "had cartel training", should the Court of Criminal Appeals emphasize the Trial Judge's duty not to comment on the weight of the evidence lest he deprive the defendant of a fair trial? TEX.CONST.art.I,sec.10; U.S.CONST.amend.VI

The prosecutors made out Passenger as a tool of a cartel, a drug cartel, a "D.T.O." The trial judge on his own initiative said "THE COURT: Okay. I believe that he

told us  he had cartel training" in front of the jury.

It has been over a decade since This Court reversed for the trial judge's commenting on the weight of the evidence, in violation of TEX.CODE CRIM.P.art.38.05. **Blue v. State**,41S.W.3d129(Tex.Crim.App.2000)["Frankly, obviously, I prefer the defendant to plead because it gives us more time....] This Court noted in **Blue** that when the Judge takes on the role of prosecutor, the error is fundamental. It quoted

> United States v. Lanham, 416 F.2d 1140 (5th Cir.1969) (actions of trial judge who improperly injected himself into role of prosecutor during trial destroyed neutrality and impartiality of trial atmosphere, defendant's credibility, and defendant's presumption of innocence, and constituted plain error)

The Court of Criminal Appeals should grant this petition and should allow full briefing because the prohibition on the Judge's commenting on the weight of the evidence, contained in TEX.CODE CRIM.P.art.38.05, applies in every criminal trial.

One concurring Judge in Blue noted:

It "is clear to me that the violation of the right to an impartial judge is an absolute right. The judge's comments in this case violated that right." **Blue v. State**, 41 S.W.3d 129, 138 (Tex. Crim. App. 2000) [Mansfield, J, concurring)

The evidence in this case was tenuous. The trial Judge's comments aided the prosecutor by letting the jury know that the Judge thought the witness who was to connect the defendant to the controlled substance "had cartel training".

The Judge's comment was the link the jury needed to find the defendant guilty.

The Court of Criminal Appeals should grant this petition, allow full briefing, and use this case as an example of what trial judges are not supposed to do.

Every lawyer in Texas who practices criminal law knows about Blue. "What? The trial judge told the jury he wished the defendant would plead guilty?"

Every judge in Texas who tries criminal cases should know about the Bus Passenger's case, this case. This Court

should grant this petition so that that can happen and so that this egregious error can be avoided.

## Conclusion and prayer for relief

Correctly applying the doctrine of affirmative links, making a practical rather than an intellectual decision to define reasonable doubt, and reiterating the rule that the Judge not comment on the weight of the evidence since the right to an impartial judge is fundamental, all merit the granting of this petition and full briefing.

Respectfully submitted
December 26, 2014.

/s/Larry Warner
Larry Warner,
Counsel for Petitioner
3109 Banyan Circle
Harlingen, Texas 78550
Phone (956)230-0361
email: office@larrywarner.com
website: www.larrywarner.com
Texas Bar#20871500;USDC,SDTX 1230; Board Certified, Criminal Law, Texas Board of Legal Specialization(1983)
Member of the Bar of the Supreme Court of the United States (1984)

In the Court of Criminal Appeals of Texas
No.# PD-1626-14

on Petition for Discretionary Review of the following:


**09-13-00075-CR**

**09-13-00072-CR**


IN THE COURT OF APPEALS
FOR THE NINTH DISTRICT OF TEXAS


**RAMIRO TREVIÑO, JR. VS. STATE OF TEXAS**


ON DIRECT APPEAL FROM THE 355TH DISTRICT COURT OF
MONTGOMERY COUNTY
TRIAL COURT NO.12-06-06351-CR

**CERTIFICATE OF SERVICE**

I mailed on  a copy of the Petition for Discretionary
Review to: District Attorney, Texas and to State
Prosecuting Attorney, P.O. Box 12405, Austin, TX 78711 on
December 26, 2014.

LAW OFFICE OF LARRY WARNER
RESPECTFULLY SUBMITTED,
December 26, 2014,

By:

*/s/Larry Warner*
Larry Warner
Counsel for Petitioner

Pursuant to Tex.R.App.Proc.9.4(i) Appellant provides this Certificate of Compliance:

I, the undersigned counsel, certify that this reply brief was prepared using WordPerfect X3 and complies with TexR.App.Proc. 9.4 and contains 3,306 words.

RESPECTFULLY SUBMITTED,
DECEMBER 26, 2014.
*/s/Larry Warner*
Larry Warner
Attorney for Appellant
3109 Banyan Circle
Harlingen, Texas 78550
PHONE 956 230 0361;
FAX 866 408 1968
email: office@larrywarner.com
website: larrywarner.com
State Bar of Tx 20871500;
USDC,SDTX 1230(1981)
Board.Certified,Criminal Law,
Texas Board Legal
Specialization(1983)
Member of the Bar of the
Supreme Court of the United
States(1984)

**APPENDIX**

Order

A copy of the Order denying the Motions for

Rehearing is unavailable. In a Petition for

Discretionary Review, the Court of Criminal Appeals of

Texas may take judicial notice of documents in the lower

court in the same case.

> An "appellate court may take judicial notice of
> its own records in the same or related
> proceedings involving same or nearly same
> parties, 1. Huffman v. State, 479 S.W.2d 62, 68
> (Tex.Cr.App.1972); Ex parte Flores, 537 S.W.2d
> 458 (Tex.Cr.App.1978)" **Turner v. State**,733
> S.W.2d 218,223 hn1(Tex.Crim.App.1987

The website of the Court of Appeals for the NINTH

District notes:

"9/16/2010 Motion disposed Appellant

8/24/2010 Exceptions filed Appellant

Event Type: Motion disposed

Description: Appellant

Date: 9/16/2010

Disposition: Motion or Writ Denied

Opinion Written:"

In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00072-CR
NO. 09-13-00075-CR
_____

**RAMIRO TREVINO JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-06-06351 CR (Count I and II)**
_____

**MEMORANDUM OPINION**

A jury convicted Ramiro Trevino Jr., appellant, of two counts of possession of a controlled substance with intent to deliver. Trevino elected to have the trial court assess his punishment and the trial court assessed his punishment at thirty years on each count, to be served concurrently. On Count I, Trevino was charged with possession of 400 grams or more of cocaine with intent to deliver, and on

1

Count II, Trevino was charged with possession of 400 grams or more of heroin with intent to deliver. Trevino appeals.[1]

Underlying Facts

According to the evidence in the record, on the evening of June 10, 2012, Montgomery County Sheriff's Deputy David Everton conducted a traffic stop of a 1999 model passenger bus traveling northbound on Highway 59 in Montgomery County, Texas. Everton stopped the bus because it had a defective taillight and, when he checked the vehicle's out-of-state license plate number through his onboard computer system, the vehicle description for that license plate did not match the vehicle. The driver of the bus was Juan Vorrath, an employee of El Expreso Bus Service. A number of the passengers on the bus were traveling from Houston to Chicago.

Deputy Everton testified that he has special training relating to Drug Trafficking Organizations (DTOs), and that such organizations often use major corridors like Highway 59 and Interstate 45 to transport narcotics and contraband that they then disperse throughout the United States. Further, the vehicles used by the DTOs often are actually registered to third-parties, and the drugs are hidden in either a natural or man-made compartment to avoid detection. Everton has found

---

[1]On appeal, Count I is docketed under No. 09-13-00072-CR and Count II is docketed under No. 09-13-00075-CR.

drugs or contraband in various areas of a vehicle, including windshield wiper voids, brake lights, spare tires, head liners, and in objects inside the vehicle like water bottles. The courier is often given limited information from the DTO, but the courier knows that contraband or narcotics is being transported. The courier is paid a fee to watch the load, make sure no one tampers with it, and confirm that it gets to its destination. According to Montgomery County Sheriff's Department Detective Jeffrey Scott Spencer, who is assigned to the Narcotics or Special Investigation Unit, the DTOs are made up of a network of individuals that may or may not know each other, but all of the individuals are working together to transport and distribute drugs and contraband.

When Deputy Everton stopped the bus, Vorrath, the bus driver, opened the door to the bus to speak to Everton. Everton noticed that the driver kept his hands on the steering wheel and would not make eye contact with Everton. When Everton was talking to the driver, Everton noticed a passenger (later identified as Trevino) stand up in the back of the bus. The passenger was "acting in a nervous manner" and "pacing back and forth." Everton testified that it appeared the passenger was looking for a back way to get off the bus. None of the other passengers acted upset or nervous. According to Everton, the bus driver gave Everton permission to search the bus. With the assistance of a K-9 narcotics dog,

Deputy Everton searched the bus. The dog alerted to a "sleeper berth" area, an area typically used by the drivers. Drugs were located beneath a mattress in a hidden compartment cut out of the flooring of the sleeper berth area on the bus. Trevino had been sitting in the "approximate location" of the sleeper berth, where law enforcement found the drugs. There was fresh sawdust in the inside of the sleeper berth. Inside Trevino's luggage, they found a sanding device which Deputy Everton testified is consistent with the type of tool a person might use to create hidden compartments for hiding contraband. Everton testified that when he boarded the bus to speak with the driver, Trevino was the only passenger who stood up, and Trevino was standing in the area where the drugs were found.

Law enforcement attempted to obtain fingerprints from the bundles or packaging of the drugs, but no fingerprints were obtained. The lack of fingerprints did not surprise the officers. According to Deputy Everton, drug couriers often "wear gloves to keep from, number one, touching [the packaged drugs] and keeping the chemicals from absorbing into their—into their blood stream." Furthermore, Everton testified the bundles recovered "were covered in axle grease and mustard and then wrapped in cellophane, and then more axle grease and mustard, and then vacuum sealed together."

4

Other law enforcement officials also assisted in the investigation at the scene of the stop, including Deputy Alfredo Aguirre and Splendora Police Corporal Eddie Hernandez. Hernandez speaks fluent Spanish and has special training in drug interdictions and apprehending couriers and drug dealers. Both Aguirre and Hernandez observed Trevino acting nervous and talking to the bus driver after everyone exited the bus. Hernandez testified that he observed Trevino and the bus driver talking to one another and that Trevino appeared to be "nervous." Further, he observed that Trevino's seat was in "the approximate location" of the sleeper berth towards the back of the bus, and that in his opinion the demeanor of Trevino and the bus driver indicated guilt when the hidden compartment was discovered.

When the passengers were interviewed by the law enforcement personnel at the scene, several of the passengers told Deputy Everton that during the trip the driver and Trevino both paid particular attention to the sleeper berth, and that Trevino got mad at another passenger that attempted to look inside the berth. The driver and Trevino told passengers on the bus that they were "not to go in it for any reason." One of the passengers, A.G., testified that Trevino told the other passengers not to go near the sleeper berth and that he got mad at her when her eight-year-old daughter, also a passenger on the bus, tried to look inside the sleeper

5

berth. A.G. further testified that she was extremely frightened when she learned that the bus was transporting drugs.

Trevino and the driver were both detained and questioned. Detective Spencer obtained a statement from Trevino and the statement was admitted into evidence without objection from Trevino. Trevino initially told Detective Spencer that he was on the bus traveling to Blytheville, Arkansas, to work in a "cotton field." Trevino had in his possession upon arrest a one-way ticket to Blytheville, Arkansas, that he paid for with cash. According to Detective Spencer, Trevino also admitted that he told passengers to stay away from the sleeper berth but he claimed he only warned them to stay away "because they have personal stuff in there." Trevino denied acting "aggressively" toward any of the passengers. According to Detective Spencer, Trevino's luggage and its contents did not match his story. Trevino was also found in possession of a cellular phone and a series of text messages were recovered from it. Detective Spencer testified that some of the conversations were with an unidentified person with a 214 area code. A summary of some of the messages from the cellular phone was admitted into evidence without any objection from Trevino. According to Detective Spencer, the text messages to and from Trevino's wife were inconsistent with Trevino's story about

6

traveling to Blytheville, Arkansas, and there were some messages that "were specifically talking about -- about drugs, the purchase of drugs, narcotics."

## Issues on Appeal

In his corrected appellate brief, Trevino states that his issues include what he phrases as eleven issues. Taking the corrected brief as a whole, and combining the related or restated issues, we summarize the issues Trevino raises as follows:

1. The evidence is legally insufficient to sustain the verdict.

2. The trial court committed reversible error when it instructed the jury "on the presumption of innocence."

3. The trial court committed reversible error when it refused to provide the jury with a definition of "reasonable doubt."

4. The trial court committed reversible error in denying Trevino's motion for mistrial which was made during the State's closing argument.

5. The State's reference to "community expectations" during closing argument was improper, and constituted fundamental constitutional error.

6. The trial court committed reversible error in conducting the hearing on the motion to suppress in the presence of the jury.

7. The State's argument during the punishment phase was improper and in violation of article I, section 10 of the Texas Constitution.

8. The trial court committed fundamental error in commenting on the weight of the evidence when it referred to a "drug cartel."

9. Trevino's trial counsel provided ineffective assistance of counsel by failing to object to the trial judge's alleged comment on the weight of the evidence connecting the defendant to a drug cartel.

7

10. The trial court erred in admitting testimony from one of the State's witnesses regarding the "societal costs of drug use[.]"

11. The clerk committed reversible error by improperly conducting a "shuffle" of the panel.

## Legal Sufficiency of the Evidence

In Trevino's first issue he challenges the legal sufficiency of the evidence to sustain the jury's verdict. More specifically, he argues that there is insufficient evidence of "knowledge" and that the evidence was "inadequate" to show "affirmative links" between the contraband and Trevino.[2] Trevino contends that he was merely one of many passengers on the bus and that the drugs were "found in a secret compartment, under a mattress, in a bag, under a trapdoor, inside a private sleeping compartment for relief drivers, while [as a] passenger [he] was in the public area of the bus."

The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In evaluating

---

[2]In his brief Trevino challenges the legal sufficiency of the evidence regarding possession, and he does not challenge the intent-to-deliver element of the offense. *See* Tex. Health & Safety Code Ann. § 481.112(f) (West 2010).

8

the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Id.* at 902 n.19; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The jury is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 894; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. We may not substitute our judgment concerning the weight and credibility of the evidence for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Furthermore, the jury is the sole judge of the credibility of the witnesses and is free to accept or reject some, all, or none of the evidence

9

presented by either side. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

To establish possession of a controlled substance the State must establish that the person voluntarily "possessed" the contraband. *See* Tex. Penal Code Ann. § 6.01(a) (West 2011). Possession is voluntary "if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* § 6.01(b) (West 2011). When a defendant does not have exclusive possession of the place where the contraband was found, the reviewing court must examine the record to determine if there are additional independent facts that "affirmatively link" the defendant to the contraband. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). The requirement of "affirmative links" is aimed at protecting innocent bystanders from conviction based solely on their proximity to someone else's contraband. *Id.*

Some of the factors recognized by courts to "affirmatively link" a defendant to contraband include whether: (1) the defendant was present during the search; (2) the contraband was found in plain view; (3) the defendant was in proximity to and had accessibility to the contraband; (4) the defendant had a right of possession to the place where the contraband was found; (5) the defendant made incriminating statements when arrested; and (6) the defendant's conduct indicated a

10

consciousness of guilt. *See Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *Nixon v. State*, 928 S.W.2d 212, 215 (Tex. App.—Beaumont 1996, no pet.). It is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162.

The record reveals "affirmative links" that a rational fact finder could have concluded connect Trevino to the heroin and cocaine found on the bus. The drugs were found in a sleeper berth in an area near Trevino's seat on the bus, Trevino warned other passengers to stay away from the sleeper berth and visibly got upset when another passenger tried to open the door to the sleeper berth, Trevino was the only passenger that stood when police entered the bus, Trevino appeared nervous and looked like he was trying to find an exit off the bus and paced back and forth, Trevino gave a statement at the scene, and the information he provided to the officers did not fit with where he was going, what he intended to do, and why he had the possessions that he did. Trevino was also found with a cellular phone that contained text messages that "were specifically talking about -- about drugs, the purchase of drugs, narcotics."

Viewing the evidence in the light most favorable to the verdict, we conclude that there are sufficient affirmative links to enable a rational jury to have determined that Trevino was in possession of the drugs recovered from the bus,

11

and the evidence was legally sufficient to support Trevino's convictions on both counts. *See Evans*, 202 S.W.3d at 162; *Brooks*, 323 S.W.3d at 902, n.19. We overrule issue one.

<u>Instruction Regarding Presumption of Innocence</u>

In his second issue, Trevino complains that the trial judge improperly stated the presumption of innocence when she read the charge aloud to the jury. Specifically, Trevino complains of the following statement made by the trial court when reading the charge: "The presumption of innocence alone is sufficient to acquit the Defendant unless the jurors *aren't* satisfied, beyond a reasonable doubt, of the Defendant's guilt after careful and impartial consideration of all the evidence in the case." (emphasis added). The written charge states as follows: "The presumption of innocence alone is sufficient to acquit the defendant unless the jurors *are* satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case." (emphasis added). During the trial, Trevino made no objection to the charge as read or submitted to the jury.

When the appellant fails to make an objection to an alleged jury charge at trial, an appellant must show that the alleged error created "egregious harm," i.e., such harm that he did not have a fair and impartial trial. *See Almanza v. State*, 686

S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Egregious harm is present where the error goes to the very basis of the case or vitally affects the defensive theory. *See Ex parte Smith*, 309 S.W.3d 53, 63 (Tex. Crim. App. 2010). The actual degree of harm is assessed in light of the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information in the record. *See Almanza*, 686 S.W.2d at 171. Reviewing courts should use common sense in determining whether there is a reasonable likelihood that the jury was misled. *See Mireles v. State*, 901 S.W.2d 458, 460 (Tex. Crim. App. 1995).

The alleged error appears to involve one word wherein the trial judge was heard to say "aren't" rather than "are" as contained in the written charge which was submitted to the jury. We conclude that the alleged misreading of the one word by the trial judge did not amount to "egregious harm," especially when considered in light of the remainder of the charge as a whole both as read to the jury and as written and given to the jury, as well as in light of the arguments of counsel made during closing argument and the overall context. The court simply misread a word in the charge. In the context of the alleged misreading, the mistake was cured by the submission of a correct written instruction. *See Ramirez v. State*, No. AP-76100, 2011 WL 1196886, at *18 (Tex. Crim. App. Mar. 16, 2011) (not designated for publication) ("The context makes clear that the trial court simply misread one

13

word of the written jury instruction[,]" finding no error.); *Gulf Ins. Co. v. Gibbs*, 534 S.W.2d 720, 725-26 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.) (the incorrect reading of a charge was corrected by the submission of a written charge). We overrule this issue.

<u>Trial Court's Refusal<br>to Provide the Jury a Definition of "Reasonable Doubt"</u>

During the jury deliberation, the jury sent a question to the court wherein the jury asked: "Can we get read a definition of reasonable doubt?" The trial court provided a written response to the question as follows: "We cannot answer your question. Please continue to deliberate." At trial, both the State and Trevino agreed with the response that was provided by the trial court.

Trevino argues for the first time on appeal that the trial court committed reversible error when it refused to provide the jury with a definition of "reasonable doubt." Trevino argues the trial court should have provided the jury with a definition of "reasonable doubt," and further that the failure to do so, when combined with the alleged error regarding the presumption of innocence, amounts to a constitutional violation of Trevino's due process rights under the Fourteenth Amendment to the U.S. Constitution and the due course of law provision to the Texas Constitution.

14

In Texas, a jury instruction regarding the definition of "reasonable doubt" is no longer required. *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000). The Court of Criminal Appeals has overruled prior precedent requiring that the jury in a criminal case be instructed on the definition of "beyond a reasonable doubt" holding that "the better practice is to give no definition of reasonable doubt at all to the jury." *Id.* at 573 (footnote omitted). However, the Court in *Paulson* also noted that if both parties were to agree on a submitted definition, "it would not constitute reversible error for the trial court to acquiesce to their agreement." *Id.* There is nothing in the record before us to indicate that Trevino objected to the instruction at issue. Furthermore, Trevino did not submit a requested instruction on the definition of "beyond a reasonable doubt," and the parties did not agree upon a definition thereof. Trevino and the State agreed on the record with the answer the trial court provided to the jury's question. Therefore, we conclude the trial court did not commit error in refusing to provide a definition of "reasonable doubt."[3] *Id.* We overrule this issue.

<u>Trial Court's Refusal to Grant a Mistrial and</u>

[3]Because we have determined that the trial court did not commit error, we need not address Trevino's constitutional challenge wherein he argues that the alleged error caused "egregious harm" and violated his due process rights under the Fourteenth Amendment to the U.S. Constitution and the due course of law provision to the Texas Constitution. *See* Tex. R. App. P. 44.2.

## Statements Made During Closing Arguments

Next, Trevino argues that the trial court committed reversible error in refusing to grant him a mistrial in response to the State's closing argument. More specifically, he says: "The state argued that the defendant should have presented witnesses to prove he was a 'good guy' . . . in derogation of the court's charge that he had no duty to present evidence." The following exchange occurred during the State's closing argument:

> *STATE'S ATTORNEY*: If this guy was such a great guy -- we didn't hear from one person in his family. He didn't even put his mom on the stand.
>
> *DEFENSE ATTORNEY:* Objection. You told the jury, and it's in the instruction, we don't have to do any of that. That is improper argument, Judge.
>
> *THE COURT:* I'll sustain the objection.
>
> *DEFENSE ATTORNEY:* We'll ask for a limiting instruction, Judge.
>
> *THE COURT:* Ladies and gentlemen of the jury, please disregard the comment of Counsel.
>
> *DEFENSE ATTORNEY:* Judge, at this time we're going to move for a mistrial.
>
> *THE COURT:* I'm going to deny your request.

We review a trial court's decision to grant or deny a motion for mistrial under an abuse of discretion standard. *See Archie v. State*, 221 S.W.3d 695, 699

16

(Tex. Crim. App. 2007); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). We will uphold the trial court's decision if it is within the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). In reviewing the trial court's decision to deny a mistrial, the reviewing court will focus on the "severity of the misconduct," the curative measures taken by the trial court, and the certainty of conviction absent the misconduct. *See Hawkins*, 135 S.W.3d at 77. In most cases, the trial court's instruction to disregard will cure any error. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

A defendant has a right not to testify at his trial under the Texas and United States Constitutions, as well as under Texas statutory law. U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 2005). And, a prosecutor's comment regarding the defendant's failure to testify amounts to an impermissible comment only if, when viewed from a jury's standpoint, the comment is manifestly intended to be, or is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

In the case before us, however, Trevino is not arguing that the State commented upon his failure to testify, but rather that the State commented about his failure to call any witnesses. Our courts have consistently held that the State may argue in its closing argument that the defendant failed to present evidence in his favor. *See Bible v. State*, 162 S.W.3d 234, 249 (Tex. Crim. App. 2005) (stating that State may comment on defendant's failure to call certain witnesses and such comment is not impermissible attempt to shift burden of proof); *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000) (prosecutor's reference during closing argument to defendant's failure to produce expert testimony was not improper because the remark did not fault the defendant for exercising his right not to testify); *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) (holding that a prosecutor's comment is not improper if it "can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony"); *Rodgers v. State*, 486 S.W.2d 794, 797 (Tex. Crim. App. 1972) (explaining that a prosecutor may comment on the accused's failure to call a witness absent a showing that the witness was incompetent or that the accused could not, despite his exercise of due diligence, secure the witness's attendance at the trial); *Baines v. State*, 401 S.W.3d 104, 107-08 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding that a prosecutor's comment on the defense's failure to subpoena two

18

witnesses was not error); *Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (noting that "[d]uring jury argument, the State may comment on appellant's failure to present evidence in his favor"); *Lee v. State*, 21 S.W.3d 532, 544 (Tex. App.—Tyler 2000, pet. ref'd) (prosecutor's comment on the accused's failure to call the doctor that the accused told a witness he had taken the victim to see was not improper jury argument).

Considering the entirety of the State's argument and the context of the statements at issue, we conclude that the trial court did not commit error in refusing to grant a mistrial. Furthermore, we find that the error, if any, had but a minimal effect and was cured by the trial court's instruction to disregard the comments. *See Wesbrook*, 29 S.W.3d at 115. Moreover, on this record, the jury would have convicted Trevino even absent the alleged misconduct. *See id.* We overrule this issue.

In addition to the foregoing, Trevino also contends that the State made improper arguments during the closing that referred to "community expectations" and constituted fundamental error. The last statement made by the State during its closing was as follows:

> If you want our community to be known as a place that does not tolerate this crap and what it brings and the collateral effects, you respond with one word twice, "Guilty." Thank you.

19

And, Trevino argues on appeal that the State made "bolstering" arguments about the officers or law enforcement personnel. During trial, the defense made no objection to the statements. Trevino contends on appeal that the arguments caused harmful error because he contends the evidence in this case "was so weak and depended so much on the credibility of the officers[.]"

In general, a proper jury argument will fall within what courts generally describe as one of four categories: summation of the evidence, reasonable deductions from the evidence, response to opposing counsel's arguments, and pleas for law enforcement. *See Cannady v. State,* 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Nevertheless, it is improper for the State to argue that the community expects a certain verdict or punishment. *See Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990). The State may, however, request the jury to represent or be the voice of the community when reaching its verdict. *See Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984). The State may also properly remind the jury that its decision can reflect a desire for strong law enforcement. *See Goocher v. State*, 633 S.W.2d 860, 864-65 (Tex. Crim. App. 1982).

Furthermore, to preserve error in cases of alleged prosecutorial misconduct, the defendant must: (1) make a timely and specific objection; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and

20

(3) move for a mistrial. Tex. R. App. P. 33.1(a); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Here, in addition to his failure to object to the prosecutor's statement, Trevino failed to request a jury instruction and move for a mistrial. *See* Tex. R. App. P. 33.1(a); *see also Cockrell*, 933 S.W.2d at 89. Accordingly, we overrule Trevino's arguments relating to this issue.

<u>Motion to Suppress</u>

Prior to the beginning of the trial Trevino filed a Motion to Suppress the evidence obtained from the traffic stop arguing that the search of the vehicle was "illegal, since conducted without a valid warrant, or probable cause, or reasonable suspicion, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, Article I § 9 of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure." The trial court asked the attorneys at the beginning of the trial about pretrial matters and the following discussion took place in reference to the Motion to Suppress:

> *THE COURT:* Okay. So what do you want to deal with right now, before we bring the jury in?
>
> *DEFENSE ATTORNEY:* I'll leave that to your discretion.
>
> *THE COURT:* Well, we can deal with extraneous --
>
> *DEFENSE ATTORNEY:* We can probably put a halt to the day with my Motion to Suppress Evidence regarding the traffic stop.

21

*STATE'S ATTORNEY:* I respectfully ask that we just carry it with the trial.

*THE COURT:* That's what I want to do.

*DEFENSE ATTORNEY:* You're the judge. But if we could have -- if we could go over the Motion in Limine. I believe I provided that yesterday. I don't know if there's objections to it.

*THE COURT:* Okay. Have -- Mr. -- Mr. [Prosecutor], have you seen his Motion in Limine?

When the State called Deputy Everton as a witness during the trial, defense counsel notified the trial court that Everton was the witness that made the stop and that the Motion to Suppress related to his testimony.

*DEFENSE ATTORNEY:* This gentleman is the one who made the stop, and he is the one who we have the Motion to Suppress, because of his stop.

*STATE'S ATTORNEY:* You can carry it. I can --

*THE COURT:* I'll just listen to it now.

*DEFENSE ATTORNEY:* The motion?

*THE COURT:* Yeah. I mean -- right, yeah.

*DEFENSE ATTORNEY:* Thank you.

*THE COURT:* Thank you for alerting me.

*DEFENSE ATTORNEY:* Yes, ma'am.

*(Proceedings at the bench concluded.)*

22

*DEFENSE ATTORNEY:* Are we going to have our hearing with the jury present?

*THE COURT:* I was going to do it in front of the jury.

*DEFENSE ATTORNEY:* Okay. May I proceed?

*THE COURT:* Yes.

After hearing the testimony, the trial court denied Trevino's motion to suppress.

Under article 28.01 of the Texas Code of Criminal Procedure, the trial court is vested with the discretion of whether or not to hold a hearing on a pre-trial motion to suppress. *See* Tex. Code Crim. Proc. Ann. art. 28.01, § 1(6) (West 2006). The court can hold the hearing, or it can choose to determine whether to suppress the evidence complained of during the trial on the merits after a proper objection is lodged. *See id*.; *Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012); *Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988).

Texas Rule of Evidence 103(c) states "to the extent practicable," proceedings "shall be conducted . . . so as to prevent inadmissible evidence from being suggested to the jury by any means[.]" Tex. R. Evid. 103(c). And, Texas Rule of Evidence 104(c) states that: "In a criminal case, a hearing on the admissibility of a confession shall be conducted out of the hearing of the jury. All other civil or criminal hearings on preliminary matters shall be conducted out of

the hearing of the jury when the interests of justice so require or in a criminal case when an accused is a witness and so requests." Tex. R. Evid. 104(c).

No objection on this issue appears in the record, and the failure to object ordinarily waives the issue on appeal. *See* Tex. R. App. P. 33.1. Admitting that he failed to object, Trevino argues in his brief that conducting the Motion to Suppress hearing in the presence of the jury was a "fundamental error" for which no objection was required. In support of his argument, he relies on *Jackson v. Denno*, 378 U.S. 368 (1964).

In *Denno*, the United States Supreme Court discussed the New York statutory procedure used by New York courts which allowed submission of the issue of the "voluntariness" of a confession to be submitted to a jury in the same proceeding as the guilt or innocence proceeding. The Supreme Court concluded that the New York procedure violated the due process clause of the Fourteenth Amendment. *See Denno*, 378 U.S. at 387-88. We find *Denno* inapplicable because Trevino's Motion to Suppress does not pertain to the voluntariness of a confession.[4]

---

[4]Trevino also cites to *Davis v. State*, 368 So.2d 880 (Ala. Crim. App. 1979), for his argument that "[t]here is no difference between [a] hearing in the presence of the jury [for] suppression of a confession and [a] hearing in the presence of the jury [for] suppression of narcotics." The Alabama opinion is not controlling on this Court and it does not support his argument. The Alabama Court of Criminal

24

In the case at bar Trevino agreed to the procedure adopted by the trial court to carry the motion to suppress in the trial, and then implicitly agreed to allow the motion to suppress to be heard "in the presence of the jury." We conclude, based upon the record before us, that Trevino waived his objection. Tex. R. App. P. 33.1. We overrule this issue.

Ineffective Assistance of Counsel

Trevino asserts that he was denied effective assistance of counsel during the guilt or innocence phase of the trial. Specifically, Trevino complains in two stated issues that his counsel was ineffective because he "failed to object to the trial judge's comment on the weight of the evidence connecting the defendant to a drug cartel." To prevail on a claim of ineffective assistance of counsel, Trevino must satisfy a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

---

Appeals, in finding the trial court erred in refusing a hearing on defendant's motion to suppress outside the presence of the jury and in overruling his objection to such admission made during the trial, noted that there were "multiple efforts on the part of [Davis] to prevent the evidence being admitted: (1) by written motion to suppress and (2) by oral objection during the trial on the merits." *Id.* at 882. Therefore, the facts in *Davis* are distinguishable from the facts in this case.

showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). An appellant must demonstrate a reasonable probability that, but for his counsel's errors, the outcome would have been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Id.*

Trevino must prove that there was no plausible professional reason for the specific acts or omissions of his counsel. *See id.* at 836. Furthermore, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The bare record on direct appeal is usually insufficient to demonstrate that "counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone*, 77 S.W.3d at 833 (citation omitted). With a silent record, we cannot presume that counsel's conduct constituted ineffective assistance. *See id.; Thompson*, 9 S.W.3d at 813-14.

26

Furthermore, Trevino has failed to establish that, but for counsel's alleged errors and omissions, the outcome of his trial would have been different. *See Bone*, 77 S.W.3d at 833, 836-37. Even if trial counsel had objected to the reference made by the trial court to a "drug cartel," the evidence was still legally sufficient, based on the testimony from the witnesses and evidence admitted at trial, for the jury to have found Trevino guilty on both counts. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *West v. State*, 121 S.W.3d 95, 111 (Tex. App.—Fort Worth 2003, pet. ref'd); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Trevino's issues regarding alleged ineffective assistance of counsel are overruled.

<u>Testimony about Effects of Drugs</u>

In his next issue, Trevino contends that the testimony presented to the jury by the State "about societal costs of drug use" was improper and inadmissible. With respect to this issue, the record reveals Trevino made only one objection on relevancy grounds to one specific question, which was sustained. Trevino failed to object to any of the other questions relating to the subject or to seek a running objection.

> *Q.* And what sort of -- what sort of effects do these drugs have on the individual that uses them?

27

*A.* Well, they cause them -- I mean, they become addicted to them. That's pretty much the only thing that they want. They'll do whatever they have to do or whatever they need to do to get it.

They'll spend all their money, their savings, spend everything, sell whatever they have to to be able to -- in order to get that high, that euphoria, I guess.

*Q.* And do -- once that euphoria -- is the euphoria for something like crack very intense but brief?

*A.* Yes.

*Q.* And then if I talk about somebody crashing off of it, what am I talking about?

*A.* When the high is gone and they're craving it again.

*Q.* Okay. So is there -- is the -- the guy in the --

*DEFENSE ATTORNEY:* Your Honor, I'm going to object to relevance.

*THE COURT:* Sustained.

*STATE'S ATTORNEY:* Okay.

*Q.* Needless to say, is it safe to say that based upon what you know, and the folks that you've dealt with over the years, being with the Sheriff's Department and the D.E.A., you know of the effects that cocaine and heroin, in this case, have upon property crimes, crimes against people, and destroying communities?

*A.* Yes, very much.

Based on our review of the record, we conclude that Trevino waived his objection to the testimony in question. Texas law requires a party to continue to

object each time the allegedly inadmissible evidence is offered, unless the defense counsel requests a running objection or objects out of the presence of the jury to all testimony he deems objectionable on a given subject. *Ethington v. State*, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991). Additionally, error in the admission of evidence is cured when the same evidence comes in elsewhere without objection. *Id.*at 858; *see also Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996); *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984). Trevino did not object until the subject had already been discussed by the witness in response to several other questions, and he also did not object to the follow up questions by the State after his relevancy objection was sustained to one of the questions.

The principle case upon which Trevino relies on appeal is *Ex parte Lane*, 303 S.W.3d 702 (Tex. Crim. App. 2009). In *Lane*, a police officer testified about what he called an "epidemic" relating to methamphetamine. The Court of Criminal Appeals held that it was deficient performance by the defense in failing to object to the testimony because such "is not a factor linking applicant with, or bearing on, possession of the methamphetamine," and it was likely to inflame the jury. *Id.* at 709. But, the *Lane* Court recognized the difference in the mere possession offense and the possession with intent to deliver offense, and it noted that with respect to

29

the intent to deliver or distribute, testimony regarding the effects of drug trafficking would be admissible and the trial counsel was not deficient for failing to object to such testimony relating to the "intent to deliver" offense. *See id.* at 710-11. In Trevino's case, he was charged with two counts of possession of a controlled substance with intent to deliver and therefore testimony regarding the effects of drug trafficking would be admissible and trial counsel would not be deficient for failing to object to such testimony as it could have related to the "intent to deliver." We overrule this issue.

Argument Made During Punishment Phase

Trevino also argues that the State made an improper argument at the punishment phase of his trial in violation of article 1, section 10 of the Texas Constitution because it "called for a response from the defendant who did not testify" and it "was a violation of the defendant's right not to be a witness against himself." And, he contends the error was a fundamental constitutional error. His complaint stated in his brief is directed to the following statement made to the trial court by the State during the punishment phase of the trial (the defendant elected to have the trial court and not the jury decide his punishment).

> *STATE'S ATTORNEY:* (To Defendant) We do not want you here. We are not down with what you do, Ramiro.

Trevino made no objection to the statement during the trial, and we conclude that the overall context and content of the statement does not necessarily call for a response from the defendant or constitute a violation of the defendant's right not to testify. Accordingly, this issue is overruled.

<u>Shuffling of the Jury Panel</u>

Finally, in his last issue, Trevino claims that the court clerk committed reversible error by "shuffling the voir dire panel without a request from either party[.]" In support of his argument, he cites to *Alexander v. State*, 523 S.W.2d 720 (Tex. Crim. App. 1975). We find the facts in *Alexander* to be factually distinguishable.

In *Alexander*, the issue was whether or not the court had a duty to grant the defendant's request for a shuffle. *See id*. at 721-22. Trevino is not complaining about his or the State's request for a jury shuffle. When a trial court chooses to *sua sponte* order a shuffle, no error exists as long as the trial judge does not deny the request by a party for a second shuffle. *See Wilkerson v. State*, 681 S.W.2d 29, 30-31 (Tex. Crim. App. 1984). Similarly, we conclude that the same analysis should apply when a clerk of court chooses to *sua sponte* order a shuffle, and no error would exist on this record because the court did not deny a request for a second shuffle. Additionally, because the right to a jury shuffle does not fall within the

31

very limited class of rights immunized from a harm analysis by the United States Supreme Court, the failure to grant a shuffle is subject to a harm analysis. *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (only errors that the Supreme Court has designated as "structural" are categorically immune from a harmless error analysis). On the record before us, we conclude Trevino has failed to establish harmful error. We overrule Trevino's issues and we affirm the judgments of the trial court below on both counts.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Horton, J., concurs without written opinion.

Submitted on August 12, 2014
Opinion Delivered October 22, 2014
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

# IN THE NINTH COURT OF APPEALS

09-13-00072-CR
09-13-00075-CR

Ramiro Trevino Jr.
v.
The State of Texas

On Appeal from the
410th District Court of Montgomery County, Texas
Trial Cause No. 12-06-06351 CR (Count I and II)

## JUDGMENT

THE NINTH COURT OF APPEALS, having considered these causes on appeal, concludes that the judgments of the trial court should be affirmed. IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that the judgments of the trial court are affirmed.

Opinion of the Court delivered by Justice Leanne Johnson

October 22, 2014

## AFFIRMED

\*\*\*\*\*\*\*\*\*\*

Copies of this judgment and the Court's opinion are certified for observance.

Carol Anne Harley
Clerk of the Court

FILE COPY



# Court of Appeals
## State of Texas
## Ninth District

CHIEF JUSTICE
STEVE MCKEITHEN

JUSTICES
CHARLES KREGER
HOLLIS HORTON
LEANNE JOHNSON

CLERK
CAROL ANNE HARLEY

OFFICE
SUITE 330
1001 PEARL ST.
BEAUMONT, TEXAS 77701
409/835-8402   FAX 409/835-8497
WWW.TXCOURTS.GOV/9THCOA.ASPX

November 13, 2014

William J. Delmore III
Asst. District Attorney
207 W. Phillips, 2nd Floor
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

Larry Warner
3109 Banyan Circle
Harlingen, TX 78550
* DELIVERED VIA E-MAIL *

**RE:**   Case Number:         09-13-00072-CR
          Trial Court Case     12-06-06351 CR (Count 1)
          Number:

**Style:**   Ramiro Trevino Jr.
             v.
             The State of Texas

The Appellant's motion for rehearing in the above styled and numbered cause was overruled this date.

Sincerely,

CAROL ANNE HARLEY
CLERK OF THE COURT

cc:   Kimberly Holzwarth (DELIVERED VIA E-MAIL)
      Judge K. Michael Mayes (DELIVERED VIA E-MAIL)
      Barbara Adamick (DELIVERED VIA E-MAIL)
      Robin Cooksey (DELIVERED VIA E-MAIL)
      Sheryl Stapp (DELIVERED VIA E-MAIL)

FILE COPY



# Court of Appeals
## State of Texas
### Ninth District

CHIEF JUSTICE
STEVE MCKEITHEN

JUSTICES
CHARLES KREGER
HOLLIS HORTON
LEANNE JOHNSON

CLERK
CAROL ANNE HARLEY

OFFICE
SUITE 330
1001 PEARL ST.
BEAUMONT, TEXAS 77701
409/835-8402   FAX 409/835-8497
WWW.TXCOURTS.GOV/9THCOA.ASPX

November 13, 2014

William J. Delmore III
Asst. District Attorney
207 W. Phillips, 2nd Floor
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

Larry Warner
3109 Banyan Circle
Harlingen, TX 78550
* DELIVERED VIA E-MAIL *

**RE:**   Case Number:   09-13-00072-CR
          Trial Court Case   12-06-06351 CR (Count 1)
          Number:

**Style:**   Ramiro Trevino Jr.
             v.
             The State of Texas


The Appellant's Motion for Rehearing En Banc in the above styled and numbered cause was overruled this date.

Sincerely,

CAROL ANNE HARLEY
CLERK OF THE COURT


cc:   Kimberly Holzwarth (DELIVERED VIA E-MAIL)
      Judge K. Michael Mayes (DELIVERED VIA E-MAIL)
      Barbara Adamick (DELIVERED VIA E-MAIL)
      Robin Cooksey (DELIVERED VIA E-MAIL)
      Sheryl Stapp (DELIVERED VIA E-MAIL)